HECKLER, SECRETARY OF HEALTH AND HUMAN
SERVICES *v.* LOPEZ ET AL.

No. A–145.   Decided September 9, 1983

JUSTICE REHNQUIST, Circuit Justice.

Applicant, the Secretary of Health and Human Services (Secretary), requests that I issue a partial stay pending appeal of a preliminary injunction issued by the District Court for the Central District of California.   The Court of Appeals for the Ninth Circuit rejected the Secretary's application for an emergency stay and for a stay pending appeal.   On September 1, 1983, I granted the Secretary's request for a temporary stay pending further consideration of the application and the response.   I have now decided to grant the stay requested by the Secretary.

This class action was instituted by numerous individuals and organizations to challenge the Secretary's failure to follow two Ninth Circuit decisions in terminating the payment of benefits under Title II and Title XVI of the Social Security Act to recipients in the Ninth Circuit.   On the authority of *Finnegan* v. *Matthews,* 641 F. 2d 1340 (CA9 1981),

and *Patti* v. *Schweiker*, 669 F. 2d 582 (CA9 1982), respondents contend that the Secretary cannot terminate the payment of benefits without producing evidence that a recipient's medical condition has improved since he previously was declared disabled. The Secretary, on the other hand, relying on agency regulations which specifically disavow the holdings of *Patti* and *Finnegan*, contends that she can terminate benefits when current evidence indicates that a prior recipient is not now disabled. She argues that she need not produce specific evidence that the prior recipient's medical condition has improved.

Respondents styled their claim in the District Court as a constitutional challenge to the Secretary's "nonacquiescence" with settled law in the Ninth Circuit, an action which they argue violates constitutional principles of separation of powers and which deprives them of due process and equal protection. The District Court granted respondents' motion for class certification and their motion for a preliminary injunction.

The first part of the District Court's injunction, which the Secretary has not sought to stay, restrains the Secretary from disregarding *Patti* and *Finnegan* in pending and future cases. Paragraph 4(c), on the other hand, directs the Secretary within 60 days of the order to notify each member of the class that he can apply for reinstatement of benefits if he believes that his medical condition has not improved since his initial disability determination. Paragraph 4(c) requires the Secretary immediately to reinstate benefits to the applicants who apply. Following reinstatement of benefits, the Secretary can conduct hearings to establish lack of disability, but in those hearings, the Secretary must make a showing of medical improvement pursuant to *Patti* and *Finnegan* before terminating benefits. In a later order the District Court ruled that the Secretary can recoup interim benefits if she produces evidence at the hearing that the applicant's medical

condition has improved now or that it had improved at the earlier time when benefits were terminated.

On August 15, 1983, after the Ninth Circuit refused to issue an emergency stay, the Secretary notified approximately 30,000 members of the class that they could apply for reinstatement of benefits. The Secretary already has begun to receive applications. Thus the Secretary only requests that I stay the portion of Paragraph 4(c) which requires her to pay benefits to all applicants until she establishes their lack of disability through hearings complying with *Patti* and *Finnegan*.

My obligation as a Circuit Justice in considering the usual stay application is "to determine whether four Justices would vote to grant certiorari, to balance the so-called 'stay equities,' and to give some consideration as to predicting the final outcome of the case in this Court." *Gregory-Portland Independent School District v. United States*, 448 U. S. 1342 (1980) (REHNQUIST, J., in chambers). The Secretary's stay application does not come to me in the posture of the usual application, however. The Secretary does not ask me to stay the judgment of the Court of Appeals pending the disposition of a petition for certiorari in this Court. She asks instead that I grant a stay of the District Court's judgment pending appeal to the Ninth Circuit when the Ninth Circuit itself has refused to issue the stay.

Although there is no question that I have jurisdiction to grant the Secretary's request, it is also clear that "'a stay application to a Circuit Justice on a matter before a court of appeals is rarely granted.'" *Atiyeh v. Capps*, 449 U. S. 1312, 1313 (1981) (REHNQUIST, J., in chambers) (citation omitted); see *O'Rourke v. Levine*, 80 S. Ct. 623, 624, 4 L. Ed. 2d 615, 616 (1960) (Harlan, J., in chambers). For the reasons I am about to set out, I believe that the present case is sufficiently unusual to warrant the relief sought.

. Ordinarily, in an action for an injunction, the decision of the court on the "merits" will be of greater concern to a re-

viewing court than the particular provisions of an injunction, which are primarily entrusted to the discretion of the district court. In this case, however, I believe that the scope of the District Court's injunction would prompt review of the injunction by at least four Members of this Court should the Court of Appeals affirm it without modification. I believe this is true even though I assume that the Court of Appeals for the Ninth Circuit will certainly follow its *Patti* and *Finnegan* decisions when it hears the Secretary's appeal. I likewise assume that since there does not appear to be any significant circuit conflict on this point at present, four Justices of this Court would not be likely to grant a petition for certiorari should the Secretary seek review in this Court of the merits of a Ninth Circuit opinion reaffirming *Patti* and *Finnegan*.

But the District Court's injunction goes far beyond the application of *Patti* and *Finnegan* to concrete cases before it. I think that Paragraph 4(c) of the injunction issued by the District Court, because of its mandatory nature, its treatment of the statutory requirement of exhaustion of administrative remedies, and its direction to the Secretary to pay benefits on an interim basis to parties who have neither been found by the Secretary nor by a court of competent jurisdiction to be disabled, significantly interferes with the distribution between administrative and judicial responsibility for enforcement of the Social Security Act which Congress has established. While review of an injunction issued by a lower federal court independently of the "merits" of the issue involved in the case is not common, this Court has not hesitated to reverse a District Court where it concluded that the injunction did not comply with a provision of the Federal Rules of Civil Procedure, without ever reaching the "merits" of the question involved. See, *e. g.*, *Schmidt* v. *Lessard*, 414 U. S. 473 (1974).

The injunction issued by the District Court in this case must be evaluated first in the light of the provisions for judi-

cial review of determinations of eligibility for benefits by the Secretary. The principal provisions follow:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 49 Stat. 624, as amended, 42 U. S. C. § 405(g) (1976 ed., Supp. V).

"The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter." 42 U. S. C. § 405(h).

We have held that these provisions codify the doctrine of exhaustion of administrative remedies, circumscribe the methods by which judicial review of a determination of the Secretary may be obtained, and set forth the standard for the exercise of judicial review. *Weinberger* v. *Salfi*, 422 U. S. 749 (1975). We have also held that the scope of judicial review of the Secretary's determinations is a very limited one. *Heckler* v. *Campbell*, 461 U. S. 458, 466 (1983).

The scope of the District Court's injunction must also be evaluated in the light of familiar principles of administrative law enunciated in our decisions. In *Vermont Yankee Nu-*

clear *Power Corp.* v. *Natural Resources Defense Council, Inc.*, 435 U. S. 519, 524 (1978), this Court said:

> "[T]his Court has for more than four decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments. In *FCC* v. *Schreiber*, 381 U. S. 279, 290 (1965), the Court explicated this principle, describing it as 'an outgrowth of the congressional determination that administrative agencies and administrators will be familiar with the industries which they regulate and will be in a better position than federal courts or Congress itself to design procedural rules adapted to the peculiarities of the industry and the tasks of the agency involved.'"

In *FPC* v. *Transcontinental Gas Pipe Line Corp.*, 423 U. S. 326, 333 (1976), this Court similarly observed: "[I]n the absence of substantial justification for doing otherwise, a reviewing court may not after determining that additional evidence is requisite for adequate review, proceed by dictating to the agency the methods, procedures, and time dimension of the needed inquiry and ordering the results to be reported to the court without opportunity for further consideration on the basis of the new evidence by the agency. Such a procedure clearly runs the risk of 'propel[ling] the court into the domain which Congress has set aside exclusively for the administrative agency.' *SEC* v. *Chenery Corp.*, 332 U. S. 194, 196 (1947)."

With these general principles in mind, I turn to the particulars of the injunction issued by the District Court. It is unlike the usual "prohibitory" injunction which merely freezes the positions of the parties until the court can hear the case on the merits. See *University of Texas* v. *Camenisch*, 451 U. S. 390, 395 (1981). The injunction issued here is in substance, if not in terms, a mandatory one, which "like a mandamus, is an extraordinary remedial process which is granted, not as a matter of right but in the exercise of a

sound judicial discretion." *Morrison* v. *Work*, 266 U. S. 481, 490 (1925).

Paragraph 4(c) forces the Secretary immediately to pay benefits to every Supplemental Security Income (SSI) and Social Security Disability Insurance (SSDI) recipient whose benefits have been terminated within the last two years because of cessation of disability. It also forces the Secretary to pay benefits to every SSI recipient under the "Grandfather Clause" of the Social Security Act whose benefits have been terminated within the last three years because of cessation of disability. The Secretary's obligation to pay is triggered merely by the recipient's statement in his application that, in his subjective belief, his medical condition has not improved since the earlier determination. I have serious doubt, which I believe would be shared by other Members of this Court, whether this provision is consistent with 42 U. S. C. § 405(i) or with this Court's admonition in *Schweiker* v. *Hansen*, 450 U. S. 785 (1981), that the courts have a duty " 'to observe the conditions defined by Congress for charging the public treasury.' " *Id.*, at 788 (quoting *Federal Crop Insurance Co.* v. *Merrill*, 332 U. S. 380, 385 (1947)).

The nature of the mandatory relief granted by the District Court in this case is exacerbated by the fact that the District Court defined the class to include numerous individuals who have never received "final decisions" from the Secretary on their claims within the meaning of 42 U. S. C. § 405(g) and over whom arguably the District Court has no jurisdiction. In *Weinberger* v. *Salfi, supra,* the Court held that there was a nonwaivable and a waivable portion of § 405(g)'s exhaustion requirement. The nonwaivable portion requires that "a claim for benefits shall have been presented to the Secretary" before judicial review can be sought. *Mathews* v. *Eldridge*, 424 U. S. 319, 328 (1976). Like this case, *Mathews* involved a prior recipient whose benefits were terminated. We held there that the nonwaivable exhaustion requirement had been satisfied because, after Eldridge re-

ceived notice of termination, he "specifically presented the claim that his benefits should not be terminated because he was still disabled." *Id.*, at 329. The preliminary injunction here, however, covers individuals who have never questioned the initial determination that they cease to be disabled. I have difficulty in seeing how these individuals have satisfied the nonwaivable jurisdictional requirement set out in *Salfi*.

The class includes still other individuals who have satisfied *Salfi*'s nonwaivable but not its waivable exhaustion requirement. These individuals may have sought review of the original agency determination that their benefits should be terminated, but they never pursued their claims any further. We held in *Salfi* that the Secretary herself could waive the exhaustion requirement if she deemed it futile in a particular case, but we also held that "a court may not substitute its conclusion as to futility for the contrary conclusion of the Secretary." *Weinberger* v. *Salfi*, 422 U. S., at 766.

In this case the District Court concluded that the Secretary's announced policy of nonacquiescence establishes her final position on the medical improvement issue and that further exhaustion would be futile. Although there are other federal-court opinions which have accepted that argument, there is no decision of this Court that has interpreted the Secretary's announcement of her interpretation of a Social Security statute as a waiver of the exhaustion requirement. See *Ringer* v. *Schweiker*, 697 F. 2d 1291 (CA9 1982), cert. granted, *ante*, p. 1206. The Secretary vigorously pressed the exhaustion argument before the District Court, noting that many of the class members who did exhaust their administrative remedies have had their benefits restored for reasons unrelated to the medical improvement issue. The District Court's determination that exhaustion would be futile seems to me to contradict our holding in *Salfi* that such determinations properly rest with the Secretary and not with the court.

Relying on this Court's decision in *Mathews*, respondents argue that they present the kind of case where deference to the Secretary's judgment concerning the need to exhaust is inappropriate. They argue that they are not making a demand for benefits *per se*, but rather that they are raising a collateral constitutional challenge to the Secretary's failure to comply with Ninth Circuit precedent. I am not persuaded that just because respondents put the label "constitutional" on their claim they can fit within the language of our opinion in *Mathews*. The constitutionality of the failure of the Secretary to provide pretermination hearings in *Mathews* appears substantially different to me from respondents' claim that their benefits were unlawfully terminated because of the Secretary's insufficient evidentiary showing. Unlike the claim in *Mathews*, respondents' unlawful-termination claim could benefit from further factual development and refinement through the administrative process.

Respondents argue that all class members are prior recipients who were once determined to be disabled by a final decision of the Secretary, and that the District Court has merely exercised its broad remedial powers to return the class members to the positions they occupied before the unlawful termination. Whatever might be the merits of such a determination in a lawsuit between private litigants, the remedial powers of a federal court in an action seeking to enjoin an agency of a coordinate branch of the Government are circumscribed by the principles which I have previously stated. This Court recently granted certiorari in *Day* v. *Schweiker*, 685 F. 2d 19 (CA2 1982), cert. granted, 461 U. S. 904 (1983). In that case the Solicitor General contends that an order of payment of interim benefits was beyond the authority of the District Court. If the full Court were to sustain this contention, its opinion might well indicate that an award of interim benefits such as that contained in Paragraph 4(c) of the District Court's order in the present case was likewise beyond the competence of such a court.

The Secretary takes issue with the assessment of comparative equities by the District Court and by the Court of Appeals. For purposes of ruling upon the Secretary's application, I think I must accept, and do accept, the factual conclusions of both of these courts on the question. It bears repeating that if it seemed to me that nothing more were involved than the exercise of a District Court's traditional discretion in fashioning a remedy for an adjudicated harm or wrong, there would be no occasion for me as Circuit Justice to grant a stay where both the Court of Appeals and the District Court had refused to grant one. But as I have stated earlier in this opinion, I do not believe this is such a case. I agree with the statement of this Court in *FCC* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 141 (1940):

"A much deeper issue, however, is here involved. This was not a mandate from court to court but from a court to an administrative agency. What is in issue is not the relationship of federal courts *inter se*—a relationship defined largely by the courts themselves—but the due observance by courts of the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution. A review by a federal court of the action of a lower court is only one phase of a single unified process. But to the extent that a federal court is authorized to review an administrative act, there is superimposed upon the enforcement of legislative policy through administrative control a different process from that out of which the administrative action under review ensued. The technical rules derived from the interrelationship of judicial tribunals forming a hierarchical system are taken out of their environment when mechanically applied to determine the extent to which Congressional power, exercised through a delegated agency, can be controlled

within the limited scope of 'judicial power' conferred by Congress under the Constitution."

I therefore grant the application of the Secretary to stay Paragraph 4(c) of the order of the District Court pending determination of the Secretary's appeal by the Court of Appeals for the Ninth Circuit.