Lillian **EDWARDS**, Plaintiff,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant.**

**No. CV–82–3550.**

United States District Court, E.D. New York.

Oct. 19, 1983.

LeBoeuf, Lamb, Leiby & McRae, New York City, for plaintiff; John T. Patterson, New York City, of counsel.

Raymond J. Dearie, U.S. Atty. by Kathleen A. Haggerty, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Plaintiff had been receiving supplemental security income ("SSI") since January 1, 1974. Her benefits were terminated when the Secretary of Health and Human Services decided that as of November, 1981 she was no longer disabled within the meaning of the Social Security Act. The Secretary's determination rests on a decision by the Administrative Law Judge ("ALJ") who presided over a *de novo* hearing on plaintiff's claim that she continues to be disabled. The ALJ's decision became the Secretary's final determination when it was approved by the Appeals Council.

Reversal of the decision is sought on the grounds that it is contrary to law and unsupported by substantial evidence; and that the ALJ 1) failed to apply this Circuit's legal standards for evaluating the medical conclusions of a claimant's treating physician; 2) did not develop the evidence on which the decision was based; 3) neglected to assist an unrepresented claimant in producing evidence that favors her claim; and 4) ignored substantial evidence of disability.

Since plaintiff was without counsel in this court as well as in the administrative phases of her case an attorney from the court's pro bono panel was appointed. The panel consists of volunteers who devote their legal skills to aid those too poor to afford a lawyer. Private contributions support a fund to pay for some of the expenses of the litigation. A public corporation, the Eastern District Civil Litigation Fund, Inc., administers these funds. In this case it made available enough money to permit a post-ALJ hearing evaluation by a doctor that fully confirmed, what the record before the ALJ established, that plaintiff's medical condition was completely disabling.

Plaintiff has offered in this court to produce new evidence at a future hearing before the ALJ, including medical records subsequent to her hearing and four hospitalizations in the last four months. Such an additional hearing is not necessary. The records before the ALJ substantiated Ms. Edwards' own testimony, the conclusions of her treating physician, medical records and circumstantial proof. This evidence demonstrates that the ALJ was wrong when he concluded, without any warrant in the record, that plaintiff's condition had improved since the original determination of disability in 1974 and was improving. Given the presumption of accuracy in the 1974 disability decision of the Secretary and the degenerative nature of her condition, in addition to overwhelming proof of current disability, the ALJ's finding that she is now capable of working is explicable only by reference to budgetary considerations, not by any valid legal or medical criteria.

A remand to the Secretary for reconsideration of all the evidence would serve no purpose. When the proper legal standards are applied, there is more than enough evidence on the record to mandate a determination of disability. In addition, there are no gaps in the record for which the Secretary can be expected to produce evidence of non-disability. Consequently the Secretary's decision denying continuing SSI ben-

efits must, for the reasons indicated below, be reversed.

## I. FACTS

Lillian Edwards was born in June of 1928 in Brooklyn, New York. Following her graduation from high school she worked steadily at a variety of relatively low-level jobs as a secretary and cashier.

In 1969 she had a total cystectomy (removal of urinary bladder) and a radical hysterectomy (removal of the uterus and nearby tissue) required by cancer of the cervix. She had already submitted to prolonged radiation therapy. An ileostomy (surgical opening of the abdomen to create an artificial anus so that the contents of the small intestine can be discharged) was performed at the same time. Subsequent to this surgery, and as an unavoidable result of it, Ms. Edwards became subject to recurrent attacks of pyelonephritis (inflammation of the kidneys and kidney pelvis). This resulted in further operations in 1972 and 1974 for surgical revision of urethral implantations.

In January of 1974 Ms. Edwards was determined by the Secretary to be disabled and began receiving SSI benefits. Her kidney disorders continued, with frequent hospitalizations. In 1976 her right kidney was removed due to renal failure from the pyelonephritis.

By letter dated February 2, 1982, Ms. Edwards was notified by the Social Security Administration that she was no longer considered disabled. This letter was apparently predicated on a cost-cutting program by the Secretary. *See, e.g., Lopez v. Heckler,* 713 F.2d 1432, 1434, n. 3 (9th Cir.1983), *reversed,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (Rehnquist, Circuit Justice, 1983); Report of the Senate Subcommittee on Oversight of Government Management on the Senate Governmental Affairs, noted in the New York Times, Sept. 29, 1983, A18; remarks of Senator Cohen, 12 Congressional Record, S13209, Sept. 29, 1983; "New York and Other States Flout U.S. Rules for Disability Benefits," New York Times, Sept. 11, 1983, A1; "The Disability Nightmare," Newsday, March 20–22, 1983.

Claimant requested a hearing. It took place before the ALJ in May of 1982. She explained to the ALJ that she had attempted to obtain an attorney but could not do so because Legal Aid's resources were already overstrained—a fact which the court judicially notices on the basis of many cases in this court where the poor cannot obtain any legal assistance. *See* Fed.R.Evid.R. 201.

■ At the hearing, Ms. Edwards testified that she has pyelonephritis for which she was taking a diuretic ("water pill"). There was no contradiction of her testimony that the diuretic required that on many occasions she empty her ileostomy bag every fifteen minutes. She also has diarrhea which she cannot completely control because of the ileostomy, although she had been taking Lomotil for this problem. If she is required to travel, as for example to the hearing itself, she cannot take the medication for her remaining kidney or eat anything beforehand. Her medications and conditions produced abdominal pains for which she took Zactirin or Percodan. To combat extreme nausea "about every other day," she takes Compazine. She is also on antibiotics for recurrent urinary tract infections. She takes Aldomet for her hypertension. Her pain and other extremely discomforting symptoms are consistent with side effects attributable to her medications. Judicial Notice supports these subjective symptoms. Physician's Desk Manual (1983); *cf.* Fed.R.Evid.R. 201; *Sinatra v. Heckler,* 566 F.Supp. 1354, 1356 (E.D.N.Y. 1983).

She had, she testified without contradiction, tried to find work but could not hold a job. Neither the ALJ nor the record raises any doubt about the claimant's bona fides and credibility. There is no suggestion in the record of malingering.

At the hearing there was some confusion about the need to secure Ms. Edwards' medical records from Downstate Medical Center ("Downstate"). The ALJ told her— despite the fact that it was his duty to obtain these records—that he would leave

open the record for twelve days for her to obtain "whatever medical evidence you would like to submit." Within this time Ms. Edwards submitted laboratory reports, hospital records and a letter from her treating physician, Dr. Stanley L. Wallace, dated May 11, 1982, all of which she had made reference to at the hearing. The letter from Dr. Wallace concluded that Ms. Edwards was "certainly disabled and unable to work."

In August of 1982 the ALJ issued a decision denying Ms. Edwards' claim for continued SSI benefits. He acknowledged that Ms. Edwards had a "severe medical impairment," but concluded that "it is one that the claimant can still function with." He did not mention her treating physician's conclusion of disability. He also made no mention in his findings of Ms. Edwards' difficulty with travel, her frequent need to empty her ileostomy bag, her testimony regarding her past attempts to work, or of the seriously debilitating side effects which she had described as resulting from her prescribed medications.

Ms. Edwards requested review by the Appeals Council of the ALJ's decision. In a letter accompanying her request dated September 9, 1982, she indicated that she now had blood in her urine. She also indicated that the ALJ "did not listen to my testimony" and did not consider the medical reports from Downstate or Dr. Wallace's letter. Without comment the Appeals Council denied her request for review. She then filed this action under Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. § 405(g) and § 1383(c)(3), to review the final determination of the Secretary.

## II. LAW

We start with the basic proposition that on this record, the plaintiff did not have the burden of coming forward with further proof of her disability. That burden was on the Secretary.

Given the history of plaintiff's claim and the prior finding of disability, the plaintiff was presumed to be disabled when she appeared before the ALJ. As the Court of Appeals for the Ninth Circuit recently put the matter:

[T]he Social Security Administration's initial determination of disability creates a presumption that the person remains disabled. To terminate benefits, then, the Secretary is "required to 'meet or rebut'" the presumption "with evidence that [the recipient's] condition has improved in the interim.

*Lopez v. Heckler,* 713 F.2d 1432, 1434, *reversed on other grounds,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (Rehnquist, Circuit Justice, 1983). *See also Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir. 1973); *Musgrove v. Schweiker,* 552 F.Supp. 104, 106 (E.D.Pa.1982); *cf. Kuzmin v. Schweiker,* 714 F.2d 1233, 1237–38 (3rd Cir. 1983) (presumption of continuance of statutory disability is created once applicant introduces evidence that his condition remains unchanged or has worsened). The Secretary has announced that she "does not acquiesce" in these presumption holdings; this non-acquiescence is currently the subject of litigation. *See Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (Rehnquist, Circuit Justice, 1983). The Secretary's non-acquiescence notwithstanding, Mr. Justice Rehnquist assumed that "there does not appear to be any significant circuit conflict on this point." *Lopez,* —— U.S. at ——, 104 S.Ct. at 12. *But compare* the Second Circuit's announcement that it has taken no position on the Ninth Circuit position. *Schauer v. Schweiker,* 675 F.2d 55, 59 (2d Cir.1982); *see especially Greener v. Schweiker,* slip op., No. 81–3212 (S.D.N.Y. May 16, 1983); *Magee v. Califano,* 494 F.Supp. 162, 166 (W.D.N.Y. 1980) (burden of persuasion in termination proceeding is on claimant); *Memoli v. Califano,* 463 F.Supp. 578, 582 (S.D.N.Y.1978) (same); *Marker v. Finch,* 322 F.Supp. 905, 909–10 (D.Del.1971) (same).

This presumption of continuing disability is consistent with the statutory scheme, *viz,* that except for the internal review process, the Secretary cannot appeal a determination of disability by the ALJ or the Appeals

Council of disability. *See generally,* J.L. Marshaw, Social Security Hearings and Appeals (1978); *cf.* 20 C.F.R. §§ 404.969, 404.970. Were the Secretary permitted to ignore the original determination of disability based on a degenerating medical condition, she would, in effect, be reversing the original determination—something the statute does not permit.

■ As long as the original condition continues unimproved—as is the case here—the presumption of disability may be relied upon by the claimant. As a result the Secretary (1) may not base a termination of benefits on the ground that the original disability determination was mistaken, and (2) proof of the continuance of the original medical condition should automatically lead to a continuation of the benefits absent substantial evidence to the contrary. *See,* on effect of presumptions at an ALJ hearing, *Sinatra v. Heckler,* 566 F.Supp. 1354 (E.D.N.Y.1983); *cf.* Fed.R. Evid.R. 201. *But cf. Kuzmin v. Schweiker,* 714 F.2d 1233 at 1238 (3rd Cir.1983) ("the Secretary must be given the opportunity to introduce evidence that shows the original decision to have been in error").

*A fortiori* that conclusion of continued disability is required in this case. Not only has there been no attempt to show that the original finding of disability was mistaken, but the hearing itself seemed designed to avoid rather than to elicit the truth. As in *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980), "The record is replete with instances where the ALJ should have questioned plaintiff more fully concerning various aspects of [her] testimony." Were the record not so overwhelmingly favorable to the claimant that it requires outright reversal, the failure of the ALJ to assist an unrepresented claimant would have required a remand for a new hearing. *See, e.g., Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751, 756–57 (2d Cir.1982); *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980).

■ Over and over again the court of appeals and the district courts in this circuit have held that the expert opinion of a treating physician when supported by the objective medical record as to the existence of a disability is binding upon the factfinder unless contradicted by substantial evidence. *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983); *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 64 (2d Cir.1980); *Alvarado v. Califano,* 605 F.2d 34, 35 (2d Cir.1979); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 42 (2d Cir.1972); *Ghazibayat v. Schweiker,* 554 F.Supp. 1005, 1008 (S.D.N.Y.1983); *Ramirez v. Schweiker,* 554 F.Supp. 1022, 1024 (S.D.N.Y.1983). This is a rule of law. *McLaughlin v. Secretary of Health, Education and Welfare,* 612 F.2d 701, 704–05 (2d Cir.1980). "Where evidence has not been properly evaluated because of an erroneous view of the law ..., the determination of the Secretary will not be upheld." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979); *Chiappa v. Secretary of Health, Education and Welfare,* 497 F.Supp. 356, 359 (S.D.N.Y. 1980).

In his decision, the ALJ did not even mention that Dr. Wallace, Ms. Edwards' treating physician, had concluded in his May 11, 1982 letter that she was disabled. The decision mentioned the letter itself, but only for its information that Ms. Edwards had undergone cobalt therapy and surgery for cancer in 1969.

■ At the very least, this failure to evaluate Dr. Wallace's conclusion of disability is a failure of the ALJ's "obligation, virtually amounting to an affirmative duty, to create a record which clearly shows [his] awareness of the Second Circuit rule governing the opinions of treating physicians." *Chiappa v. Secretary of Health, Education and Welfare,* 497 F.Supp. 356, 360 (S.D.N.Y. 1980). The responsibility of the ALJ to produce a record is particularly heavy where, as here, the claimant is unrepresented at the hearing. If the claimant has no attorney, the ALJ must be particularly sensitive to his duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Echevar-*

*ria v. Secretary of Health and Human Services,* 685 F.2d 751, 755 (2d Cir.1982). *See also Hankerson v. Harris,* 636 F.2d 893, 897 (2d Cir.1980).

The ALJ appears not to have applied the Second Circuit rule in relation to treating physicians. At the hearing, for example, the ALJ discussed the legal standard for evaluating a physician's opinions while considering a note by Rene S. Mediavillo, M.D., Ms. Edwards' physician at Dayton Plaza Medical Center ("Dayton Plaza"), where she goes for her regular medical testing. The note was dated May 5, 1982—one week before the hearing—and it said in its entirety (Tr. 113):

> The above named patient has chronic pyelonephritis w/poor function of the *one* kidney left. She is having vomiting & water retention. [Illegible] follow up. Thank you.

The ALJ's curious reaction to this medical note is set out below:

> Q [ALJ]. Obviously and I'm sure that you being an educated person must realize that prescriptions and diagnoses carry very little weight in any hearing. The Social Security Act—
>
> A [Unrepresented claimant]. Well its a small—
>
> Q. The Social Security Act requires that any findings that are made must be objective findings and must be supported. These are conclusions that you've got here.
>
> A. You mean in other words he has to write a letter or notice that I am not able to go to work at this time?
>
> Q. No. No, what he has to do is he has to submit a statement showing where he gets the basis for his conclusions. He has made specific findings, and I'm sure that those findings will dictate—
>
> A. That's all he has.
>
> Q. On what the basis of his conclusions are. And that's what we need.

In his decision, the ALJ summarized this colloquy by writing, "The report, as explained to the claimant, was valueless since it contained conclusions without the basis of its objective findings." Given this claimant's devastating medical history, further explication of the obvious by doctor Mediavillo would have been seen by most laypersons as insultingly pretentious.

■ Regardless of the contents of the note itself, the ALJ's attempted explanation and his summary of the exchange do not accurately reflect the law in this circuit. It is well established that,

> While a claimant must show that the physical or mental impairment by reason of which he claims to be disabled "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques," 42 U.S.C. § 423(d)(3), *this does not mean that medical opinion must necessarily be supported by "objective" clinical or laboratory findings.*

*Cutler v. Weinberger,* 516 F.2d 1282, 1286–87 (2d Cir.1975) (emphasis added); *quoted in McLaughlin v. Secretary of Health, Education and Welfare,* 612 F.2d 701, 704 (2d Cir.1980); *Ramirez v. Schweiker,* 554 F.Supp. 1022, 1024 (S.D.N.Y.1983) ("the ALJ apparently incorrectly believed that [the treating physician's] opinion had to be accompanied by medical reports, test results, and the like"). The ALJ's misstatement of the law with respect to the note from Dr. Mediavillo further suggests that he applied an erroneous legal standard to Dr. Wallace's letter.

Despite its established authority, the Secretary argues against the current Second Circuit rule in her brief, claiming that "her authority to determine the question of disability would be an empty one were [she] required to accept 'uncritically and without evaluation' purely conclusory opinions of private physicians." Whatever the merit of this abstract position, the Secretary's argument is not relevant or persuasive on the facts of this case.

■ First, it is hardly true that the treating physician's report was "purely conclusory." Dr. Wallace's letter was accompanied by some two hundred pages of medical records from Downstate, detailing Ms.

Edwards' history of hospitalizations since 1969. Dr. Wallace had been her treating physician at Downstate since July 1981, so all of the records since then had been prepared under his supervision and usually with his notations. All of the patient's test results from Dayton Plaza had also regularly been forwarded to Dr. Wallace and these too were part of the record. On the basis of this extensive data Dr. Wallace had diagnosed in his letter "severe acute recurrent urinary tract infection with azotemia [an excess of nitrigenous substances in the blood as a result of kidney disease]," although the ALJ made no notice of this in his decision. On the basis of the established rule it was improper for the ALJ to ignore the treating physician's conclusions.

Second, even if Dr. Wallace's letter is considered somehow separable from the medical data supplied with it, the Second Circuit has rejected the Secretary's argument in circumstances similar to these. In *Alvarado v. Califano*, 605 F.2d 34 (2nd Cir. 1979), the Court said it need not reach the question of how much weight to give "conclusory" statements by a treating physician, "because the record contains significant medical evidence that [claimant] suffers from a variety of the possibly disabling ailments set forth." 605 F.2d at 35. *See also Hankerson v. Harris*, 636 F.2d 893, 896 n. 3d (2d Cir.1980). Here the medical evidence underlying the physicians' conclusions is voluminous, it was prepared under the supervision of Dr. Wallace and Dr. Mediavillo, and it forms the basis of their conclusions as expressed in their letters. The ALJ had no legitimate cause to ignore it.

 The third and perhaps the best answer to the Secretary's argument is that the Second Circuit rule does *not* require an ALJ to accept a treating physician's opinions "uncritically and without evaluation," but only to accept them "unless contradicted by substantial evidence to the contrary." *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1980); *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 42 (2d Cir.1972). Substantial contradictory medical evidence does not exist in this record.

The relevant medical evidence, besides that provided by Dr. Wallace's letter, Dr. Mediavillo's note, and their accompanying records, consists of a General Medical Report by Dr. Mediavillo dated December 7, 1981 and prepared at the request of the New York State Department of Social Services for the purpose of reviewing Ms. Edwards' SSI claim; a report and a Residual Functional Capacity ("RFC") Evaluation, both dated November 23, 1981, prepared by Dr. Edmond B. Balinberg, a consultative medical examiner also retained by New York State; and an RFC Evaluation dated December 16, 1981 prepared by an unknown physician.

Dr. Mediavillo's report conforms with his later note and it provides no evidence for determining that Ms. Edwards is not disabled. Dr. Balinberg's report did not come to any conclusions about Ms. Edwards' disability, nor did he produce any evidence which would contradict the treating physicians' conclusions. He did note that she was "a short, well nourished lady, oriented, alert;" these characteristics, while perhaps useful for other purposes, are irrelevant here. Dr. Balinberg's medical findings parallel those of the rest of the record, and do not provide even the beginnings of the substantial evidence needed to contradict Dr. Wallace's conclusions. *See Perry v. Secretary of Health and Human Services*, 504 F.Supp. 278 (E.D.N.Y.1980).

Dr. Balinberg's RFC Evaluation may indicate that Ms. Edwards had the physical strength for some work, but his conclusions are illegible. In any case, her physical strength for the duration of a test is not at issue. Ms. Edwards' claim must be assessed in terms of her ability to function in a sustained manner given her medical condition and the interaction of her medical symptoms, her required medications and her ileostomy. One can have the physical strength to perform certain activities and still be unable to work within the definition of the Act. 20 C.F.R. § 404.1545(d); *Leftenant v. Schweiker*, 543 F.Supp. 989, 994 (S.D.N.Y.1982).

The December 16th RFC Evaluation was based on a treadmill test for which there was "poor technical quality in the execution phase"—*i.e.*, the machine did not work. But this report also includes the following note: "Evidence for renal impairment, severe, *short of listing*. RFC limited to light activity" (emphasis added). This remark is repeated in the Cessation Determination dated December 22, 1981.

 To the extent that the ALJ's determination of nondisability was based upon the fact that Ms. Edwards' disabilities do not meet any one of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, it is legally erroneous. The Listing of Impairments does not provide the exclusive definition of disability under the Social Security Act; it provides only a list of *automatic* disabilities. If an ALJ confuses the standards of the Listings with the standards of disability itself his decision must be reversed. *Chico v. Schweiker*, 710 F.2d 947, 954–55 (2d Cir.1983). Such an error may well explain the ALJ's virtual preoccupation with Ms. Edwards' blood level Creatinine (a component of urine) and B.U.N. (blood urea nitrogen), since extremely high readings would require a finding of disability. Ms. Edwards' levels are quite high, but they are not the sole basis of her disability claim.

In sum the medical evidence does not provide "substantial evidence" contradictory to the treating physician's conclusions of disability. For the most part it is not contradictory at all and, to the extent that the RFCs suggest otherwise, they do not determine ability to work. It is uncontested that Ms. Edwards has a "severe medical impairment," as the ALJ decision itself concludes.

> Moreover, once it is determined that an impairment exists, the opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once, especially where he has treated the claimant over a substantial period of time.

*Selig v. Richardson*, 379 F.Supp. 594, 601 (E.D.N.Y.1974) (citations omitted). *Accord,* *Clifton v. Secretary of Health, Education and Welfare*, 505 F.Supp. 614, 616 (W.D.N.Y.1980).

Finally, there is one significant piece of medical evidence of which the ALJ took no notice. The Disability Evaluation Form dated November 15, 1973, on the basis of which Ms. Edwards was initially determined to be disabled, contains the following notation by the examining physician: "Note operative procedures which make work situation improbable. Still under care for kidney–UT infection." This reference to Ms. Edwards' ileostomy nowhere finds its way into the ALJ's evaluation of the evidence. Yet the 1973 report accurately reflects an important part of Ms. Edwards' disabling condition today. She still has kidney-urinary tract infections and, combined with the medication she must take, it often necessitates frequent emptying of her ileostomy bag. The ALJ did not discuss this impairment in relation to Ms. Edwards' work prospects. To suggest that a person with such hygiene and medical problems would be acceptable in any work-place setting constitutes an unsupported flight of fancy.

Rather than evaluate the medical evidence before him, the ALJ appears to have substituted his own opinion for that of the treating and even consulting physicians. In doing so he seems to have looked almost exclusively at laboratory test results for B.U.N., Creatinine, potassium and blood pressure readings to arrive at his conclusion about Ms. Edwards' ability to work. For example, the ALJ made a great deal at the hearing of a B.U.N. reading of 20 in the October 16, 1981 test results. This confused Ms. Edwards because it would be so uncharacteristically low. In fact, the ALJ had misread the report. The figure of 20 in that report refers to the B.U.N./Creatinine Ratio. The B.U.N. figure is well above average at 36.

 The ALJ's expertise to make this kind of correlation is not evident, but his conclusions are even more unusual. Apparently he determined that Ms. Edwards was not disabled because her B.U.N. "has come

down considerably" and was "encouraging," and her potassium level had "also come down to approach the normal range." An ALJ may not substitute his lay opinion of medical data for a physician's conclusions. *Ghazibayat v. Schweiker,* 554 F.Supp. 1005, 1010–11 (S.D.N.Y.1983).

The standard for judicial review of the Secretary's determination is whether the decision is supported by substantial evidence based on the whole record. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "Hence, while the court will not substitute its judgment for that of the Secretary, neither will it act as a rubber stamp of administrative determinations." *Ghazibayat v. Schweiker,* 554 F.Supp. 1005, 1013 (S.D.N.Y. 1983); *Correa v. Secretary of Health and Human Services,* 501 F.Supp. 236, 237 (S.D. N.Y.1980).

No remand is required for the purpose of considering disability. Section 205(g) of the Act, which governs judicial review of disability determinations (and which is made applicable to SSI by section 1613(c)(3)), provides:

> The court shall have the power to enter ... a judgment affirming, modifying, or reversing the decision of the Secretary, *with or without remanding the cause for a rehearing.*

42 U.S.C. § 405(g) (emphasis added). *See* 42 U.S.C. § 1383(c)(3). The Second Circuit has "reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980). That is the case here.

## CONCLUSION

The case is remanded to the Secretary for computation of benefits.

The court expresses its gratitude for the high professional skills pro bono counsel has devoted to this case. An application for a fee under the Equal Access to Justice Act, 28 U.S.C. § 2412, will be entertained.

So ordered.