Rosalind **MERSEL**, Plaintiff,

v.

Margaret M. **HECKLER**, individually and in her representative capacity as Secretary of Health and Human Services, Defendant.

No. 82 Civ. 6694 (RLC).

United States District Court, S.D. New York.

Jan. 5, 1984.

Gerald Schwartz, New York City, for plaintiff; Seymour W. Levy, New York City, o'f counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Paula A. Sweeney, Asst. U.S. Atty., New York City, Regional Atty., Region II, Asst. Regional Atty., Dept. of Health and Human Services, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

■ The issue in this case is whether the decision of the Secretary of Health and Human Services to terminate Rosalind Mersel's disability insurance benefits was proper. Mersel commenced the action pursuant to section 205(g) of the Social Security Act, as amended, ("the Act"), 42 U.S.C. § 405(g), to review the Secretary's final determination, which terminated her benefits as of December, 1980. The Secretary has moved for judgment on the pleadings pursuant to F.R.Civ.P. 12(c), and plaintiff has cross-moved for summary judgment pursuant to F.R.Civ.P. 56.[1] Because the Secretary has not come forward with substantial evidence showing a change in plaintiff's condition since the original determination of disability that would allow plaintiff to resume gainful employment, the Secre-

---

1. The Court will treat the plaintiff's motion for summary judgment as a motion for an order reversing the Secretary's decision. Because the Social Security Act confines the scope of judicial review to evidence within the administrative record, motions for summary judgment are procedurally improper vehicles for a decision on the merits of the complaint. *Garcia v. Califano*, 463 F.Supp. 1098, 1100 (N.D.Ill.1979).

tary's decision terminating Mersel's benefits is reversed.

## I

Plaintiff, now 44 years of age, suffers both mental and physical impairments. In May, 1979, she had been awarded disability insurance on the basis of her psychological difficulties alone, which were described by diagnoses of depressive neurosis, hysterical personality disorder, . . . and residual schizophrenia. (Tr. 22). They are now characterized as "generalized, overwhelming anxiety and back pain," (Tr. 60), and "chronic depressive neurosis, . . . with acute ascerbations and chronic anxiety. . . ." (Tr. 89). Her physical problems—constituting mainly pain in her neck and back—have been diagnosed recently as cervical spondylosis and degenerative disc disease of the entire spine. (Tr. 67, 69, 100).

She last worked in 1977 as a receptionist/administrative secretary for an advertisement firm. According to plaintiff's testimony, she left the job because she found it increasingly difficult to report to work due to depression and anxiety. (Tr. 7, 22). She says she cannot work now, regardless of whether the job is less stressful than her former work, because of the distress she feels even in carrying out daily living functions, which often prevents her from going out, and sometimes causes a "hysterical reaction" entailing dizziness, nausea, and "the shakes." (Tr. 7).

There are five reports from physicians who have treated plaintiff and three from State agency physicians, some of which are accompanied by clinical data. In a report dated November, 1980, Dr. Richard Reich, a psychiatrist who had treated Mersel for the previous year on a weekly basis, stated that her prognosis was guarded, due to the long-term nature of her condition and her failure to show improvement. (Tr. 60). In January, 1981, he catalogued the deterioration of her condition and concluded that she would not be able to work for the foreseeable future. (Tr. 65).

Dr. George Samios, a psychiatrist and neurologist, who had treated Mersel on a weekly basis since June 6, 1981, reported that she had periods of depression where she was unable to leave her apartment for weeks. As of October, 1981, he noted Mersel's condition was somewhat improved in that she could leave her apartment, but she continued to have problems with insomnia and she looked depressed and related in a depressed manner. (Tr. 89). On March 12, 1982, he reported that Mersel was very anxious, and that her "emotional difficulties and related symptoms render her unable to cope with the stress and responsibility of employment." (Tr. 96).

The State agency's review physician, Dr. M. Osinoff, basing his report on a telephone contact with Reich, found that plaintiff did not meet the Act's Listing of Impairments, 20 C.F.R. Part 404, subpart P, Appendix 1, and could carry out simple instructions, as well as respond appropriately in low stress situations. (Tr. 63).

Mersel was treated at the Mount Sinai Medical Center in February, 1981 by Dr. Mitchell Levine, who stated that she was disabled and required admission to the hospital for a further myelogram and possible surgery. (Tr. 66). The cervical myelogram showed evidence of degenerative spondylosis and degenerative subluxation. (Tr. 67). In March, 1982, Levine wrote that the question of disability resulting from spondylitic disease of the cervical spine was subjective, but that Mersel's pain was consistent with her radiographic findings. (Tr. 98–99). His diagnosis was confirmed by Dr. Milton Lowenthal at the Institute for the Crippled and Disabled ("ICD") Rehabilitation and Research Center, who noted in March, 1981 that her pattern of pain had remained unchanged since his contact with her a year before, and increased commensurate with her level of activity. (Tr. 78–79).

The most recent report came from Dr. Raymond Coll, who saw Mersel in February, 1982. At that time, she had full range of motion in her neck and shoulders, but complained of neck pain and severe dizziness. Coll concluded that Mersel was suffering from chronic cervical joint disease with nerve root compression, a chronic problem. He predicted that any future physical activity relating to her arms and

shoulders would precipitate recurrence of her present symptoms, which he found to be disabling. (Tr. 100–01).

The State agency physician, Dr. L.H. Elstein, did not examine Mersel. Basing his report of February, 1981 on those of doctors Levine and Reich, he determined that her problems were not severe enough to prevent her from doing non-stressful sedentary work. (Tr. 52). A second Social Security review in October, 1981 by Dr. M. Gershenson, resulted in similar findings based on reports from Dr. Samios, the ICD Center, and Mount Sinai. (Tr. 55).

The Administrative Law Judge ("ALJ") recited most of this available evidence in her decision. She concluded, however, that the case turned on the strength of plaintiff's own allegations of constant and disabling anxiety, depression and pain. Finding these not credible, the ALJ determined that Mersel could perform a wide range of work-related functions and, therefore, did not have a severe impairment. As of December, 1980, and through the date of her decision, the ALJ held that Mersel was not under a disability as defined by the Act.[2] In August, 1982, the Appeals Council affirmed this determination with the modification that plaintiff's disability had ceased as of January, 1981, the date on which plaintiff was notified of the administrative determination. This modified decision became the final decision of the Secretary.

## II

The standard of judicial review of the Secretary's determination is whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).[3] Judicial review is fairly straightforward in cases involving the Secretary's initial denial of disability claims. Regulations promulgated by the Secretary set forth a five-step sequence to be utilized in evaluating such claims. 20 C.F.R. §§ 404.1520, 416.920 (1983). These specify the findings necessary to a determination of disability and the Second Circuit has set forth the burden of proof at the various stages.[1] The reviewing court may follow the sequential approach set forth to insure that there is substantial evidence backing the Secretary's decision at each point. *See Barry v. Schweiker*, 675 F.2d 464, 466–67 (2d Cir. 1982).

A review of the Secretary's decision in termination hearings is not so well delineated in this Circuit. Neither the proof that must be adduced to challenge successfully the termination decision, nor the allocation of presumptions and burdens between the claimant and the Secretary have been set out. *See Wheeler v. Heckler*, 724 F.2d 262 (2d Cir.1983).[5] The Secretary

**2.** To establish that she is disabled within the meaning of the Act, a plaintiff has the burden of showing that (1) she was unable to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment is demonstrated by evidence supported by data obtained by medically-acceptable clinical or laboratory techniques. 42 U.S.C. § 423(d).

**3.** Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 404 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The court cannot make a de novo determination, *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980), but it must scrutinize the entire record to ascertain rational support for the Secretary's decision in the evidence upon which she relied. *See Scherer v. Schweik-*

er, 530 F.Supp. 128 (S.D.N.Y.1982) (Weinfeld, J.).

**4.** *Cf. Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982) (concept of burden of proof elusive in cases involving social security benefits since proceedings are not designed to be adversarial).

**5.** Judge Newman, writing for the Court, stated: What sort of record will meet the "substantial evidence" test in termination cases, whether the Secretary bears some burden of producing evidence of medical improvement after a beneficiary has presented evidence that the medical condition underlying the prior determination has continued, and whether a burden of persuasion remains with the beneficiary are issues ... not decided on this appeal. *Wheeler v. Heckler, supra* at 263.
*See also Delamater v. Schweiker*, 721 F.2d 50 at 54 (2d Cir.1983) (per curiam); and *Schauer v. Schweiker, supra*, 675 F.2d at 57–59 (2d Cir. 1982).

urges the Court to place the burden of proof on claimant to demonstrate that her disability continued past the time of cessation found by the Secretary, requiring the Secretary to show only that the claimant is now able to engage in substantial gainful activity, regardless of whether actual improvement in claimant's condition can be demonstrated. Plaintiff neglects to address this issue, and the statutory language sheds no guiding light on the matter. Nevertheless, the Court rejects the Secretary's position.

■ The standard proposed by the Secretary takes no account of the prior determination of claimant's disability. The Secretary's approach would afford an independent, second review of claimant's disability claim—an opportunity to analyze claimant's condition as if she or he had applied anew for disability benefits. Continuing disability investigations ("CDI") and the termination procedures that may result from them were not, however, intended to subject claimants to perpetual *de novo* reviews. Rather, CDIs were implemented to insure that benefits do not continue to be paid to those who have medically or otherwise recovered from their disability.

A demonstration that a claimant has improved has been and remains the central issue in termination proceedings. Until 1980, it was assumed that most disability awards involved chronic, static, or progressive impairments subject to little or no medical improvement. Consequently, CDIs were only undertaken in cases of certain enumerated disabilities, where improvement was deemed possible. S.Rep. No. 408, 96th Cong., 2d Sess. 60–61, *reprinted in* 1980 *U.S. Code Cong. & Ad.News,* 1338–39. Because of the relatively small number of reviews of these awards, critics argued that continued payments of benefits were made to many persons who had medically or otherwise recovered from their dis-

ability. Congress responded to these criticisms. CDIs are now mandatory, at least once every three years, as to each recipient whose disability has not been determined to be permanent. 42 U.S.C. § 421(h) (Supp. 1983). This response was, however, strictly quantitative—an expansion of the oversight program by increasing the number of reviews to be conducted. Absent any indications to the contrary, upon review only those who had improved or recovered could be considered ineligible for continued benefits.

Thus far the Third, Fourth and Ninth Circuits have refused to adopt the Secretary's proposed approach to termination proceedings.[6] Each circuit has required a demonstration of some change in claimant's condition before his or her benefits may be discontinued. Each circuit has found that a claimant, having already carried the burden of proof in a prior hearing on the merits of his or her disability claim, is entitled to the benefit of a presumption that the disability still exists.[7] As a result, in the Third, Fourth and Ninth Circuits the Secretary must come forward with evidence that claimant's condition has improved.

■ The presumption of continuing disability merely reflects a presumption made in the Act itself—that the Secretary's initial decision was final and correct. Except for the internal review process, the Act prohibits appeals by the Secretary of disability determinations by the ALJ or the Appeals Council. *Cf.* 20 C.F.R. §§ 404.969, 404.981, 416.1455 (1982).[8] The Act makes no provision for correction of errors in the initial determination based on some arguably more informed, later review of the evidence. *See Dotson v. Schweiker,* 719 F.2d 80, 82 (4th Cir.1983). Moreover, the presumption is consistent with the allocation of burdens under the Administrative

---

6. *Dotson v. Schweiker,* 719 F.2d 80 (4th Cir. 1983); *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983); and *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982). *See also Edwards v. Secretary of Health and Human Services,* 572 F.Supp. 1235 (E.D.N.Y.1983); *Graham v. Heckler,* 573 F.Supp. 1573 (N.D.W.Va.1983).

7. *See Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 10, 12, 77 L.Ed.2d 1431 (Justice Rehnquist, Circuit Justice, 9th Cir.1983) (there is no significant circuit court dispute on this point).

8. *See Edwards v. Secretary of Health and Human Services, supra,* 572 F.Supp. at 1239 (1983).

Procedure Act, 5 U.S.C. § 551 *et seq., see Dotson, supra,* 719 F.2d at 82,[9] and with the familiar principle "that a condition, once proved to exist, is presumed to continue to exist." *Patti v. Schweiker,* 669 F.2d 582, 587 (9th Cir.1982).[10] It is an important point, as well, that although the presumption requires the Secretary to come forward with evidence of improvement in claimant's health, it does not shift the burden of proof to the Secretary in termination hearings. *See Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

This approach also has a definite practical appeal. If termination hearings are viewed simply as an enlargement of the review process, arbitrary decisions will result. A "disconcerting picture ... [of] triple administrative flip flop" was presented to the Third Circuit, which lead it to adopt the rebuttable presumption of continuing disability based on "basic principles of fairness and the need to provide both the appearance and fact of consistency in the administrative process." *Kuzmin v. Schweiker,* 714 F.2d 1233, 1237 (3d Cir. 1983).

In *Kuzmin,* a woman, 50 years of age, who alleged disability due to hypertension, heart problems, Raynaud's disease and the effects of childhood polio applied for benefits in March, 1979. Initially her application was denied, but after a hearing, the Secretary found her disabled as of the date of her application. On review of her case in October, 1980, however, the Secretary found that she was no longer disabled as of that date. Claimant then brought her case to the district court, which affirmed the Secretary's decision, but by the time of oral argument before the circuit court, to which claimant had appealed, the Secretary had again determined that claimant was disabled and entitled to Social Security benefits as of July, 1982.[11]

At each level of review in *Kuzmin,* new evidence was submitted. Often, where one reviewer considered a report, another discounted it. The presumption of a claimant's continuing disability in termination hearings might at least avoid reconstruction of accumulated evidence for what may be the fifth time.[12] Moreover, the requirement that the Secretary show some improvement in claimant's condition provides a more explicit focus for review, concentrating the determination in termination hearings on a contrast between fresh evidence that might show a change in claimant's health, and previous evidence on which a determination of disability had been based.

■ Our Court of Appeals has not yet spoken directly on the question. The Court believes, however, that when faced with the question, this Circuit will follow the lead of the Third, Fourth and Ninth Circuits and require the Secretary to demonstrate that a disability claimant's condition

**9.** In *Dotson,* the court found that a determination by the Secretary that claimant is no longer disabled and that benefits must be terminated meets the definition of "order" under the Administrative Procedure Act, *supra,* and the Act provides that the proponent of a rule or order has the burden of proof. 5 U.S.C. § 556(d) (1977). *Id.*

**10.** *See also Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973), *accord Prevette v. Richardson,* 316 F.Supp. 144, 146 (1970).

**11.** The appeal before the Third Circuit concerned only the closed benefit period between January, 1981 and July, 1982.

**12.** The number of reviews depend, of course, upon whether claimant has appealed an initial denial of disability benefits. After state agency consideration of claimant's case, evidence may pass through the hands of an ALJ, the Appeals Council, the District Court, and the Circuit Court; claimant's request for a termination hearing can begin the cycle again.

*See Patti v. Schweiker, supra,* 669 F.2d at 586 (showing inconsistencies in the evidence considered at different levels of review). *See also Singleton v. Schweiker,* 551 F.Supp. 715, 722–723 (E.D.Pa.1982) ("After a final determination of disability, if a termination of benefits were effected without a showing either of improvement or newly discovered evidence, such a termination would of necessity be based on whim or caprice or would constitute an impermissible relitigation of facts and determinations already decided."), quoting *Shaw v. Schweiker,* 536 F.Supp. 79, 82–83 (E.D.Pa.1982); *Northrup v. Schweiker,* 561 F.Supp. 1240, 1242 (W.D.N.Y. 1983).

has improved before disability benefits may be terminated. Whether the decision to terminate disability benefits in this case is supported by substantial evidence depends, therefore, on whether the Secretary has produced substantial evidence of a change for the better in claimant's condition.

### III

The Secretary has made no such showing in this case. Plaintiff submitted ample evidence to support a finding that her condition remained disabling; if the record reflects a change, it is one for the worse in terms of plaintiff's ability to be gainfully employed. Reich, whom Mersel saw during 1980, commented upon the deterioration in her condition—increasing difficulty handling her own affairs due to anxiety and depression. (Tr. 65). Samios, who began treating Mersel after she stopped seeing Reich, did not contradict Reich's findings, nor produce evidence of a more sanguine picture of plaintiff's condition. He still found that she was unable to handle work situations. (Tr. 96).

Neither did the reports of claimant's back problems seem to indicate improvement in Mersel's situation. These noted consistently that claimant's back problems were chronic; the results of later examinations were consistent with her earlier ones; her degenerative back condition had not improved and the pain accompanying it had not shown significant signs of decreasing.

■ There is, however, another independent reason to overturn the Secretary's decision in this case: the ALJ exceeded the scope of her authority in making her decision. She improperly failed to explain her decision to base the outcome of plaintiff's appeal for benefits on plaintiff's own allegations of constant pain and anxiety, rather than on the medical evidence, or the evidence as a whole. *See McAndrew v. Heckler*, 562 F.Supp. 1227, 1234 (S.D.N.Y. 1983) (Ward, J.).[13] As a result, the detailed reference to the medical evidence in the ALJ's decision is *pro forma;* the ALJ does not comment upon any of the expert opinions of plaintiff's treating physicians despite this Circuit's repeated admonitions that such opinions are to be given binding effect unless contradicted by substantial evidence. *Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir.1983); *Edwards v. Secretary of Health and Human Services*, 572 F.Supp. 1235, 1240 (E.D.N.Y.1983) and the cases cited therein.

■ The ALJ does not make the argument that the record contained substantial evidence rebutting the physicians' reports. Indeed, no such contention is possible on this record. The Social Security Administration's review physicians did not examine plaintiff,[14] nor did they base their conclusions on the complete medical record. To the extent that the ALJ's determination was based upon these doctors' findings that claimant's disability did not mirror any of those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1, it is legally erroneous.[15] *Edwards v. Secretary of Health and Human Services, supra,* 572 F.Supp. at 1243. The Residual Functional Capacity determinations, which indicated that Mersel could work in low stress, sedentary situations, cannot be given greater consideration. They are stated in a conclusory fashion; the basis for their conclusions concerning plaintiff's capacities are undisclosed.

---

**13.** *See Mathews v. Eldridge, supra,* 424 U.S. at 344, 96 S.Ct. at 907 (decision whether to discontinue disability benefits will turn upon routine, standard, unbiased medical reports by physician specialists who have examined claimant).

**14.** *Cf. Selig v. Richardson,* 379 F.Supp. 594, 601 (E.D.N.Y.1974) (opinions of treating physicians entitled to greater weight than impression of doctor who sees claimant once).

**15.** The Listing of Impairments, *supra,* does not provide the exclusive definition of disability under the Act; it provides only a catalogue of "automatic" disabilities. *Edwards v. Secretary of Health and Human Services, supra,* 572 F.Supp. at 1243.

Dr. Gershenson's report did not simply conclude that Mersel did not meet the Listing. However, the ALJ did not rely upon his report in her decision. In any case, this single review cannot constitute substantial evidence for the Secretary's termination of plaintiff's benefits.

It is undoubtedly the function of the ALJ, and not the Court, to pass on the credibility of all witnesses, *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *McLaughlin v. Secretary of Health, Educ. and Welfare,* 612 F.2d 701 (2d Cir.1980), and she is not obliged to accept claimant's self-serving, subjective statements. *Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir.1969). Where, however, the ALJ had to reject not only Mersel's subjective testimony concerning the pain and anxiety she feels, but also the substantial weight of the reports of her examining physicians and of other clinical findings in the record, which support claimant's own accounts, the ALJ's right to make determinations of credibility cannot insulate her decision from review. *Ghazibayat v. Schweiker,* 554 F.Supp. 1005, 1010–11 (S.D.N.Y.1983) (Lasker, J.).

Moreover, the ALJ's evaluation of plaintiff's ability to go back to some sedentary, low anxiety job seems based less on plaintiff's actual credibility than on the ALJ's own lay opinion of what plaintiff should be able to do. She concluded that plaintiff's activities were not as restricted as the latter claimed because plaintiff could perform some everyday chores on an intermittent basis—she cleaned her own home on occasion, visited her doctor weekly, made one or two social visits over an extended period, shopped approximately once every ten days, and prepared one meal per day for herself. The ALJ also noted that during the hearing, plaintiff did not appear depressed, and showed no signs of severe anxiety. These observations are pertinent, but they do not supply substantial evidence contradicting medical evidence,[16] nor show improvement in plaintiff's condition. The fact that Mersel is not totally incapacitated does not preclude an award of disability benefits, and the ALJ cannot substitute her own opinion for that of the plaintiff's treating physicians, especially when her conclusions are drawn exclusively from non-medical evidence.

A remand to the Secretary for reconsideration of all the evidence is unnecessary. There is ample evidence for the Court to conclude that plaintiff's disability insurance benefits should be restored and there are no gaps in the evidence from which the Secretary might produce additional evidence to rebut the presumption of continuing disability. *See Carroll v. Secretary of Health and Human Services, supra,* 705 F.2d at 644 (2d Cir.1983). Accordingly, the Secretary's determination is reversed.

IT IS SO ORDERED.

---

**16.** Dr. Samios found that although plaintiff appeared neat and clean, she looked depressed and related in a depressed manner.