**Clara JONES, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

No. 83 C 4333.

United States District Court,
N.D.Ill., E.D.

March 23, 1984.

Katherine Bissell, Geneva, Ill., for plaintiff.

Donna Morros Weinstein, Dept. of HHS, Dan K. Webb, U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Clara Jones ("Jones") has sued for judicial review of a final decision of the Secretary of Health and Human Services ("Secretary") revoking Jones's disability insurance benefits and supplemental security income ("SSI") benefits. For a period beginning February 8, 1978 Jones had received SSI benefits, disability benefits and a period of disability as provided by Social Security Act ("Act") §§ 216(i), 223 and 1602, 42 U.S.C. §§ 416(i), 423 and 1381a. On November 2, 1981 the Illinois State Bureau of Disability Adjudication Services (the "Bureau") found Jones was no longer disabled as of July 24, 1981 and advised her she was last entitled to benefits in September 1981.

On October 22, 1982 Administrative Law Judge Robert Camenisch ("ALJ Camenisch" or simply the "ALJ") credited the Bureau's finding Jones was no longer disabled but awarded her an extra month's benefits.[1] Jones then exhausted her administrative remedies in proper sequence (a process that resulted in the ALJ's decision becoming Secretary's) and brought this action against Secretary under Act § 205(g), 42 U.S.C. § 405(g).

As is customary in these actions, which come to this Court on the administrative record and a decision by Secretary, the parties have filed cross-motions for summary judgment. In this case the ALJ's decision (which became Secretary's) rested on his finding Jones's condition had improved to the point she can once again perform her most recent job. Jones contends the ALJ's decision should be set aside because his finding of nondisability was unsupported by "substantial evidence" in two respects:

1. Record evidence does not support Secretary's first line of defense, that Jones can return to her most recent job as an assembler.

2. Even assuming Secretary would invoke as a fallback position that Jones is capable of doing sedentary work in general (and that would involve a strained reading of the ALJ's opinion[2]), record evidence also does not support her ability to do so.[3]

Jones is overwhelmingly right on the first issue, and is thus entitled to reversal of Secretary's decision. Indeed, even had the ALJ constructed his findings differently (as the second argument assumes), termination of Jones's benefits still would not be supported by substantial evidence.

*Secretary's Position: Reasoned Decision or Unreasoning Policy?*

Like all judges, this Court follows a pretty much standardized format in opinion

---

1. Act § 1631(a)(5), 42 U.S.C. § 1383(a)(5), requires disability benefits to continue "through the second month following the month in which such ... disability ceases." ALJ Camenisch held although Jones could have returned to substantial gainful employment in July, her disability did not effectively cease until the Bureau notified Jones August 24, 1981 of its finding of cessation of Jones's disability.

2. ALJ Camenisch's Finding 3 (R. 49) credits Jones's testimony of constant pain to the extent it "is the dominant factor in limiting the claimant's exertional capacity to sedentary work." However, Finding 4 goes on to say Jones cannot lift or carry "more than minimal items." Because the ability to lift and carry items weighing up to ten pounds is subsumed in the definition of "sedentary work," Finding 4 negates any implication the ALJ intended to find Jones could perform sedentary work in general.

3. Jones's remaining contention, that the ALJ failed to give adequate weight to her subjective complaints of pain, is dealt with in evaluating the sufficiency of Secretary's assumed fallback position. Even if Jones is right on that score, it would go only to the sufficiency of evidence to support a finding Jones can do sedentary work. ALJ Camenisch's finding Jones can return to her most recent employment may be disposed of without treating the subjective complaint issue.

writing. At this point it ordinarily turns to a statement of the facts. But the extraordinary poverty of Secretary's position—a distressingly recurrent phenomenon these past few months—calls for extraordinary treatment.

This Court's docket reflects an overwhelming increase in the incidence of Social Security appeals. Until very recently a minimal number of cases, and a minimal amount of judicial time, occupied this area. As of this month, though, this Court's motion cards (a system required to avoid chaos in the business of generating opinions) reflect ten such cases already in the briefing process, and this Court's docket contains fully twice that number that will enter the cross-summary-judgment motion and briefing stage shortly.[4] But there is something far more significant than that increase in sheer volume. Almost without exception, the cases of this type that have become ripe for decision during the immediate past have had two things in common:

    1. an off-the-wall decision by an ALJ; and

    2. poor lawyering by the government in an effort to support an insupportable administrative decision.

Nor has this Court been the unlucky victim of chance assignments. Any reading of West's Federal Case News reflects the same kind of increased numbers of cases in this field of law all around the country, and the same kind of widespread rejection of what Secretary is doing. Of course neither this Court nor any other judge reverses Secretary's decisions consistently (let alone as a matter of course). Each of us engages in a conscientious application of the substantial evidence test, so that every judge will sometimes uphold Secretary's denial of benefits in a case even though the likely result of a de novo review would have been to the contrary.

Secretary's policies have goaded the federal courts in the Ninth Circuit into declaring virtually open warfare against her. *Finnegan v. Matthews*, 641 F.2d 1340, 1345 (9th Cir.1981) and *Patti v. Schweiker*, 669 F.2d 582, 586–87 (9th Cir.1982) held Secretary could not terminate a claimant's benefits without evidence of improvement of the claimant's condition since the last hearing and disability determination. In direct contravention of that holding, Secretary continued to terminate disability benefits in the Ninth Circuit based solely on a reevaluation of the evidence leading to the initial disability determination. District Judge Gray of the Central District of California issued a preliminary injunction against the practice, and after some controversy over the propriety of a stay of that injunction, the Court of Appeals affirmed. *Lopez v. Heckler*, 572 F.Supp. 26 (C.D.Cal.), *partial stay denied*, 713 F.2d 1432 (9th Cir.), *partial stay granted pending Court of Appeals' decision*, —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (Rehnquist, J.), *emergency application to vacate stay denied*, —— U.S. ——, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983), *District Court aff'd*, 725 F.2d 1489 (9th Cir.1984). See also, *e.g., Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983); *Perry v. Heckler*, 722 F.2d 461, 464 (9th Cir.1983).

This case is the worst one this Court has seen to date. Because it epitomizes a disease that has become pandemic to this entire area of law, it cries out for reexamination of fundamental premises. If Secretary believes this kind of activity is necessary to protect the fisc against some kind of subtle raid in the form of unjustified welfare payments, it would seem she ought to conduct a cost-benefit analysis. All the governmental machinery occupied in this activity—bureaucrats, medical examiners, ALJs, government lawyers, courts—involve enormous costs. And as appears likely in this case, awards of attorneys' fees against

---

4. At any given time this Court's total docket includes some 400 cases. After the elimination of cases that involve little or no judicial time before disposition (such as mortgage foreclosures, most ERISA cases, suits on judgments

obtained elsewhere, and depositions in cases filed elsewhere), the new spate of social security cases represents a highly significant component of the total workload.

the government under the Equal Access to Justice Act can compound those costs. Before the government engages in its current Pavlovian response of seeking to curtail the potential award of such fees by congressional action, it ought to examine the mote in its own eye.

No one, including this Court, wants to see undeserving claimants receive benefits. But what appears to be happening is that benefits are being denied by Secretary not on the merits in individual cases, but on a more restrictive policy that is result-oriented rather than justice-oriented. If so, responsibility in government requires an "agonizing reappraisal" (to lift a phrase from another era and another context) of that policy.

This opinion must now revert to standard practice, for it is necessary to give Secretary's position a decent burial. If the funeral services are more extended than usual, it is in the hope (though probably forlorn) that governmental attention may be drawn to the whole issue and the necessary reevaluation undertaken. Current policy simply creates too great a waste of governmental resources, including the scarcest resource in the entire system: judicial time.

### Facts

Jones, a high school graduate, was 40 years old at the time of the September 17, 1982 ALJ hearing. She has worked as an assembler for various companies including (most recently) Western Electric and Motorola. She hurt her back in 1976 and could not work until March 1977. Then on February 8, 1978 she hurt her back again while lifting a heavy fire extinguisher. She returned to work for a few days after the injury, but the pain became worse and she quit.

On October 24, 1978 Jones sought disability insurance benefits, SSI benefits and a period of disability dating back to February 8. Though the Bureau conceded she could not return to her past job as an assembler, it denied her application on the ground she could perform sedentary employment. Administrative Law Judge Charles Frisch reversed that determination July 15, 1980, finding Jones disabled and unable to engage in any substantial gainful activity.

One year later Bureau began a reevaluation of Jones's claim. At Bureau's request Jones restated her disabilities, and August 24 the Bureau informed Jones it no longer considered her disabled. Although the Bureau's August 24 letter (R. 146) stated, "We have obtained evidence to thoroughly document this finding," the record shows it in fact had *no* new evidence other than notes of an interview of Jones at which Jones made no relevant admissions. Again the Bureau conceded Jones might not be able to return to her work as an assembler but held she could perform sedentary work (R. 147, 148, 151). On review of Jones' termination ALJ Camenisch affirmed the Bureau's decision, but on the basis Jones could return to her job as an assembler rather than on the Bureau's ground Jones could perform sedentary work.

During the relevant time period Jones's condition was reviewed by many physicians and therapists whose opinions are recounted in greater detail below. All experts (both Jones's and Secretary's) agree Jones's problem results from a "ruptured" or "herniated" disc in her lower back with resulting "radiculopathy" in her legs. Jones wears a "TNS unit" that emits vibrations to help minimize her back pain. In addition some experts diagnose Jones as suffering from such added problems as hypertension, tendonitis of the left shoulder, headaches and obesity.

### Applicable Law

Secretary's decision terminating a claimant's benefits will be reversed if it is not supported by "substantial evidence based on the record as a whole." *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting from *Consolidated Edison Co. v.*

*NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

Here the ALJ's decision Jones is not "disabled" must be measured against the standard of 42 U.S.C. § 1382c(a)(3): [5]

(A) An individual shall be considered to be disabled for purposes of this title if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

■ When termination of benefits rather than denial in the first instance is at issue, Secretary's "substantial evidence" burden is to justify that termination. Quoting and following *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996, 998 (1st Cir.1975) (footnote omitted), our Court of Appeals has defined that standard in the context of benefits termination (*Cassiday v. Schweiker,* 663 F.2d 745, 747 (7th Cir. 1981)):

[Substantial evidence] will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed.

### Ability To Do Previous Work

■ As already indicated, the ALJ found Jones could return to her past employment and based termination of benefits on that finding. In a real sense the substantiality-of-evidence test never comes into play here, for no evidence whatsoever supports the ALJ's finding to that effect. ALJ Camenisch reasoned (R. 49):

1. Jones's pain and discomfort limits her to sedentary work (Finding 3).

2. Jones cannot perform "work involving lifting or carrying more than minimal items, constant standing, walking, climbing, repetitive bending or twisting" (Finding 4).

3. Jones's past relevant work "did not require the capacities referred to in the prior finding" (Finding 5).

4. Thus Jones can return to her past work (Finding 6).

ALJ Camenisch left the track at step 3 (Finding 5). While crediting Jones's testimony (R. 68–69) she can only sit or stand for 15 or 20 minutes at a time, he said (R. 48) Jones testified her past work "permitted changes in posture from sitting to standing." But the only record testimony on that point is this colloquy (R. 65):

[ALJ:] Q. All right. And you worked at Western Electric from time to time. Is that right?

[Jones:] A. Yes.

Q. Doing various kinds of soldering, assembly and soforth [sic]?

A. Yes, all of those.

Q. Most of those jobs—in most of these jobs were you standing up or sitting down?

A. Both.

---

5. Essentially identical criteria govern the two other sections under which Jones seeks benefits: 42 U.S.C. § 423(d) contains substantially similar language, while 42 U.S.C. § 416(i) incorporates that language by reference.

To infer from Jones's curt answer to the last question that Jones could sit or stand as she pleased at her work is a stretch of normal usage. More important, the record establishes she could *not* do so. Her August 17, 1981 Vocational Report (R. 162) reveals at Western Electric Jones would either sit all day or stand all day.

Moreover at both Western Electric (*id.*) and Motorola (R. 163) Jones had to bend and reach often. Thus no evidence at all supports the ALJ's Finding 5 that Jones's past work did not require constant standing, repetitive bending or other physical exertion referred to in Finding 4. Because Finding 5 is critical to the conclusion stated in Finding 6, that conclusion too is not supported by substantial evidence.

Nor could the ALJ have taken some other route to the destination that Jones could perform her past work. As already indicated, the Bureau's determinations both upon its initial denial of benefits (R. 89) and upon its later termination of Jones's benefits (R. 147, 148, 151) conceded Jones could *not* return to her past work. Indeed, a government vocational specialist retained in anticipation of the hearing before ALJ Camenisch also conceded Jones could not do so (R. 191). Finally, a Situational Assessment Report from Marianjoy Rehabilitation Hospital, compiled by Debbie Dolezal December 14 to 17, 1982 and submitted to Secretary's Appeals Council after the ALJ rendered his decision, showed (R. 24–25) Jones could not be productive (even though she was accurate) because her back problems prevented her from working more than 15–20 minutes at a time and "½ day sessions were all that Clara could physically tolerate."

### Ability To Perform Sedentary Work

This opinion could well have ended with the last section. After all, the ALJ found Jones could return to her past work, and his decision is not fairly susceptible of any alternative reading (see n. 2). Nonetheless both parties discuss the propriety of the ALJ's Finding 3 that Jones's pain still permits her to do sedentary work. And consideration of that issue bears out the total poverty of Secretary's position in this case. ALJ Camenisch could not have prevented reversal by writing his findings differently.

Only a report by Dr. Francis Kafata, a non-examining physician (R. 189) tends to support the proposition Jones can perform sedentary work. It is written on the standard form familiar to anyone with the unenviable task of reviewing Secretary's benefits determinations. It contains check marks and no real discussion of Jones's case (only the written words "can ambulate w/cane"). It also contains (as always) the caveat that the report is based on objective medical records only and not on the applicant's subjective complaints.

It is true Secretary contracted to have Jones examined by an independent physician, Dr. Subodh Shroff. But the resulting report (R. 185–86) neither supports nor undercuts the notion Jones can perform sedentary work. Instead it reviews only Jones's physical condition and appearance. Dr. Shroff diagnosed Jones as suffering from a ruptured disc with radiculopathy in both legs, obesity and hypertension, a diagnosis consistent with those of her treating physicians. While depreciating her impairment somewhat by referring to the ruptured disc as exhibiting "Minimal degenerative narrowing" (R. 186), Dr. Shroff expressed no opinion on the ultimate question whether Jones is disabled.

Such findings are at worst equivocal on the key issue here. As against them Jones presents flat-out findings of disability by no fewer than six physicians and other experts:

1. Debbie Dolezal, a situational assessment evaluator for Marianjoy Rehabilitation Hospital, found (R. 25) Jones "is unable to physically perform at a full-time, competitive level of employment."

2. Treating physician Dr. Philip Porter reported (R. 26) Jones "remains unable to be gainfully employed principally on the basis of her back and foot problems."

3. Treating physician Dr. Richard Angell stated (R. 36) Jones "has been disabled and still is and probably will be unable to do heavy work or prolonged sitting type of activities on a permanent basis."

4. Bryce Staker, a chiropractor who treated Jones in 1978 and examined her again in 1981, found (R. 37):

(a) Jones "may be able to engage in a sedentary occupation, but only as a part time basis and will probably always have pain."

(b) "[P]rolonged standing over thirty minutes and prolonged sitting for over thirty minutes will only aggrevate [sic] her condition."

5. Treating physician Dr. Oan Kang found (R. 196) Jones is "totally disabled at this time, unless her basic underlying problem is corrected by an operation, even though she probably will be partially disabled because of the unstable back after surgery."

6. Jones's regular rehabilitation counselor Michael Melody stated (R. 197):

(a) Jones's "disability still precludes employment because of pain. This prevents her from doing any type of work requiring either sitting or standing for more than very short periods of time."

(b) Jones "continues to be vocationally disabled, and will continue to be so in the foreseeable future."

Evidence provided by a single non-examining physician is not entitled to enough weight to overcome that of even *one* examining physician (let alone a treating physician), unless (1) other evidence in the record corroborates that of the non-examining physician and (2) the ALJ articulates cogent reasons for rejecting evidence of the examining physician. *Carver v. Harris*, 634 F.2d 363, 364 (7th Cir.1980) (per curiam); *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir.1977). Here Jones tenders the findings of not one examining physician, but *three* examining physicians who have treated Jones over a period of years and *three* other experts familiar with Jones's case. Only one conclusion is possible: *No* finding of Jones's non-disability based on *any* reasoning could be supported by substantial evidence.

### Conclusion

No substantial evidence exists to support the ALJ's findings, nor could any other reasoning grounded in the record lead to termination of Jones's benefits. There is no genuine issue of material fact, and Jones is entitled to a judgment as a matter of law. Secretary's decision is reversed, and she is ordered to pay Jones the benefits at issue in this action.[6]

In light of the extreme weakness of Secretary's case and the lame effort of government counsel to support it (in each respect the worst this Court has seen in this class of case),[7] Jones may well decide to pursue

6. By sheer coincidence, after this opinion had been written and announced in court, today's New York Times News Service carried a story beginning (Chicago *Tribune*, Mar. 24, 1984, at 1, col. 1):

Under pressure from the courts, state governments and Congress, the Reagan administration has tentatively decided to impose an 18-month moratorium on reviewing and cutting off Social Security disability benefits, administration officials said Friday.

According to the story:

1. More than 470,000 people have been removed from the disability rolls since the administration's program began in March 1981.

2. Some 160,000 of them have been reinstated after appeals.

3. Another 120,000 have appeals pending.

It is unclear from the newspaper account whether the moratorium, if implemented, will apply only to future reviews or would also extend to termination of the host of presently pending cases like Jones's. What *is* clear is that if what this Court has seen in microcosm has in fact been typical of the nationwide situation (and there is no reason to think otherwise), the entire matter is at least as shameful an episode as the section of this opinion just preceding the "Facts" section indicates.

7. Even if Secretary may have the kind of policy referred to preceding the "Facts" section of this opinion, counsel for the United States has a special responsibility to the justice system. ABA Code of Professional Responsibility EC 7–14 states:

A government lawyer who has discretionary power relative to litigation should refrain

the possibility of reimbursement of litigation expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412. However this Court sees no purpose in deferring the entry of judgment pending that possibility.

from instituting or continuing litigation that is obviously unfair. A government lawyer not having such discretionary power who believes there is lack of merit in a controversy submitted to him should so advise his superiors and recommend the avoidance of unfair litigation. A government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record, and he should not use his position or the economic power of the government to harass parties or to bring about unjust settlements or results.

Given the wholly untenable position of the government (which should never have forced Jones to go to court in the first place), the professionally responsible answer to this lawsuit would have been a confession of error by government counsel.