**Robert COWLEY, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

No. 83 C 5178.

United States District Court, N.D. Illinois, E.D.

Aug. 24, 1984.

Steven L. Bashwiner, Mary Ellen Hennessy, Friedman & Koven, Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty., Joan Laser, Asst. U.S. Atty., Donna M. Weinstein, Dept. of HHS, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Robert Cowley ("Cowley") seeks judicial review of a final decision of Secretary of Health and Human Services Margaret Heckler ("Secretary"). Two months after a February 1983 hearing Administrative Law Judge Donald C. Niersbach ("ALJ Niersbach" or simply the "ALJ") had found Cowley's disability (which had begun in 1976) no longer existed, therefore terminating Cowley's disability insurance benefits and denying his application for supplemental security income benefits. After Cowley had exhausted his administrative remedies, so that the ALJ's decision became Secretary's final decision, Cowley brought this action against Secretary under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Both parties have filed the usual cross-motions for summary judgment under Fed. R.Civ.P. 56. For the reasons stated in this memorandum opinion and order, both motions are denied and this case is remanded to Secretary for proceedings consistent with this opinion.

### Facts

Cowley was 57 at the time of the hearing before the ALJ. He has a tenth grade education. Cowley's past work experience, after military service in both the Army and Navy (1943–48), comprised work as a con-

ductor and motorman for Chicago Surface Lines (1948–50), as a cab driver (1950–55), in an undescribed capacity for Campbell Soup Company (1955–67) and as a maintenance mechanic for Nabisco, Inc. (1968–75).

In September 1976 Cowley suffered a myocardial infarction. Upon application for disability benefits he was found effectively disabled as of that time. In June 1982 Cowley received a notice that his disability no longer existed (R. 69) and he was no longer eligible for benefits. Cowley requested reconsideration, and the Illinois state disability examiner affirmed that decision to terminate benefits (R. 72–77), stating (R. 75):

> Though the claimant's impairments are serious enough to limit his ability to work, they do not meet or equal the level of severity as described in the Listing of Impairments. Based on the medical evidence in file, the claimant has regained the residual functional capacity to lift 50 lbs. occasionally and 25 lbs. frequently. He can stand and walk through a six to eight hour day. The claimant can do occasional bending, climbing, stooping and operation of foot controls. The claimant's customary work in the past was as a maintenance mechanic in a bakery. By his description, both the lifting and bending requirements would put this job beyond his current capacity.

Cowley's treating physician Dr. Anastacia R. Largosa diagnosed Cowley as suffering from hypertension, cirrhosis of the liver, chronic obstructive pulmonary disease, a history of myocardial infarction, chronic alcoholism and a folic acid deficiency (R. 112, 121–22). In Dr. Largosa's opinion Cowley was totally disabled from doing any work.

Social Security Administration examining physician Dr. Richard Foley found Cowley was suffering from the following list of impairments (R. 137): [1]

1. Emphysema.
2. Chronic obstructive pulmonary disease, mild.
3. Essential hypertension, moderately controlled.
4. Atypical chest pain.
5. Arteriosclerotic heart disease with old myocardial infarction.
6. Arthritis.
7. Chronic LS strain syndrome.
8. Chronic alcoholism.
9. Laennec's cirrhosis, by history.
10. History of ascites.
11. Mild cerebellar dysfunction.

In addition a February 15, 1983 report by Dr. S. Nam (R. 166) reflected a partial confirmation of Dr. Foley's findings:

> L.S. SPINE: There are mild degenerative changes in the lumbar spine. Intervertebral disc space of L5–S1 is narrowed which could represent disc disease. There are calcifications of the abdominal aorta.

At the hearing and in his written statement to ALJ Niersbach, Cowley said he could walk up to one hour a day, stand up to one hour a day, sit up to six hours a day, occasionally carry ten pounds and occasionally lift eleven to twenty pounds. He has shortness of breath after climbing only six stairs or walking one block and when reaching. Cowley also said he could not bend because of his back condition and has a problem with his balance (R. 161). He testified he has chest pains when he exerts himself in any significant way (R. 45).

In contrast, two reports (one in April and one in August 1982) by apparently the

---

**1.** It should be noted Secretary's determination to terminate Cowley's benefits (because his disability had supposedly ended) was based in part on Dr. Foley's report (R. 65, 75). If that report constitutes evidence of an *improvement* in Cowley's condition, this Court would hate to see evidence a claimant's condition had deteriorated—by Secretary's standards that would likely be a function reserved solely to coroners. It is this sort of arbitrary termination of benefits

that has caused a number of Circuits, including the Ninth, to declare war on Secretary's decision-making process. See *Lopez v. Heckler,* 572 F.Supp. 26 (C.D.Cal.), *partial stay denied,* 713 F.2d 1432 (9th Cir.), *partial stay granted pending Court of Appeals' decision,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (Rehnquist, J.), *emergency application to vacate stay denied,* —— U.S. ——, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983), *District Court aff'd,* 725 F.2d 1489 (9th Cir.1984).

same disability examiner state (without any indication of the basis for his or her conclusions) Cowley had the capability (a) to lift fifty pounds, (b) frequently to carry twenty-five pounds and (c) to stand or walk a total of six hours a day. That examiner also said (again without any statement of the underpinnings for his or her conclusions) Cowley could climb, balance and stoop on an occasional basis with unlimited ability to reach. However the examiner did advise avoiding dust and fumes (R. 118–19, 132). At the hearing Cowley testified significantly about the examination that produced those reports (R. 46):

> Q. The couple of examinations that you had with Social Security indicated that you were able to pick up certain weights between certain weights [sic]. You estimated about how long you might be able to pick those weights up. During the examinations, did the physicians ever ask you what kind of weight you might be able to pick up, to lift up?
>
> A. No, and I didn't have to demonstrate it.
>
> Q. Did they ask you to demonstrate anything?
>
> A. No.
>
> Q. How do you think they arrived at their opinion as to exactly what you could do?
>
> A. I have no idea. I really don't. They had that treadmill thing there but they never asked me to use it. I figured surely I would run on that. Well, they more or less asked me questions off of a page. I don't know how they determined that.

Cowley testified he has periods of depression and difficulty concentrating (R. 42–45). Psychiatrist Dr. Salvador Martinez found Cowley was somewhat anxious but otherwise competent (R. 123–24).

After the hearing the·ALJ found (R. 13):

The medical evidence in this case shows that the claimant suffers from the following impairments: Chronic obstructive pulmonary disease (emphysema); hypertension; a history of a myocardial infarction; a history of alcohol abuse; a history of Laennec's cirrhosis; mild cerebellar dysfunction and mild anxiety. The evidence shows that claimant's hypertension is well controlled with no evidence of any significant end organ damage. Claimant's pulmonary impairment is mild as evidence [sic] by the pulmonary function report of record. Claimant has been diagnosed as suffering from emphysema, but still persists in smoking cigarettes. Claimant testified at the hearing that he has not abused alcohol for many years now. The evidence shows that claimant has mild hepatomegaly, however, laboratory tests have been essentially normal and there is no evidence of any liver dysfunction. The evidence also fails to reveal that claimant is suffering from any significant heart disease. Claimant has a slight limitation of motion in his non-dominent [sic] elbow. This impairment is slight and should not impose a significant restriction on the claimant's ability to work. Claimant has also been diagnosed as suffering from anxiety. There is no evidence of record which shows that claimant has sought or is being treated for this impairment. The only medical evidence of record relative to this impairment is the report of Dr. Martinez (Exhibit 23). Dr. Martinez found that claimant had some anxiety, but that he was not suffering from any severe mental impairment.

ALJ Niersbach ignored (or at least did not specifically accept) Dr. Foley's findings of arthritis, chronic L.S. strain syndrome or arteriosclerotic heart disease.

According to the government's Mem. 12, the ALJ found Cowley was suffering from a severe impairment and could not do his past work because it was heavy.[2] ALJ

---

**2.** That characterization is overly charitable to the ALJ, who actually said (R. 13):

The evidence in this case shows that claimant's impairments are not severe and do not significantly restrict his residual functional capacity. Claimant's past work as a machine mechanic was heavy and skilled. While claimant should probably avoid attempting to perform heavy work, the record fails to disclose that he could not perform medium

Niersbach then went on to find Cowley could do medium work and thus was not disabled according to Social Security Administration guidelines (the "grid," 20 C.F.R. Part 404, Appendix 2, Rule 203.13 [3]).

### Termination-of-Benefits Standards

When Secretary acts to terminate benefits, there must be substantial evidence in the record as a whole to justify that termination. Normally that calls for current evidence showing either (1) that claimant has improved or (2) that claimant's condition was not as serious as first supposed. *Jones v. Heckler*, 583 F.Supp. 1250, 1254 (N.D.Ill.1984), quoting *Cassiday v. Schweiker*, 663 F.2d 745, 747 (7th Cir.1981). Secretary argues the second alternative applies here.

As the government concedes, all the evidence compels findings Cowley's impairments are severe and he cannot do his past heavy work. To meet the termination standard, substantial evidence in the record must support the ALJ's finding that the lesser seriousness of those impairments enables Cowley to do medium work.

### Cowley's Work Capabilities

Secretary's regulations define the following work categories (20 C.F.R. § 404.1567):

(a) **Sedentary work.** Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) **Light work.** Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) **Medium work.** Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

If Cowley can in fact do medium work, the grid (Rules 203.12 and 203.13) mandates a finding he is not disabled. If Cowley cannot do medium work but can do light or sedentary work, the grid makes a disability

---

work. Considering his age, education, work history and maximum sustained work capacity, Rule 203.13 of Table No. 3, Subpart P of Appendix 2, Social Security Regulations No. 4, directs that claimant be found no longer disabled. Application of the above rule directs a finding that claimant's disability ceased in April, 1982 and also directs that he be found not disabled for the purpose of determining his eligibility to receive supplemental security income benefits based upon the application for such benefits filed on August 6, 1982. Of course the conclusion Cowley's "impairments are not severe" is insupportable under the law. If he cannot do his past work because of his impairments, by definition those impairments are "severe"—more than de minimis. *McCul-lough v. Heckler*, 583 F.Supp. 934, 936–37 (N.D. Ill.1984).

**3.** Having found Cowley has severe impairments that prevent him from performing past work, Secretary attempts to meet her burden of showing he can do a job that exists in significant numbers in the national economy by using a "grid" that directs a finding of disabled or not disabled depending upon the claimant's physical capacity, age, education and work experience. That grid cannot be used when the claimant suffers from non-exertional impairments. *Smith v. Schweicker*, 735 F.2d 267, 270–71 (7th Cir.1984). In any event, this opinion's citations to the grid will simply take the form "Rule—," rather than repeating the full parenthetical citation in the text.

finding dependent on a finding that Cowley's skills used in prior employment are not transferable.[4] If the skills are transferable, he is not disabled (Rules 202.02, 202.03, 201.02, 201.03).

■ ALJ Niersbach's conclusion that Cowley could do medium work is clearly not supported by substantial evidence. Cowley's own testimony and evaluation of his capabilities—wholly consistent with all the credible medical evidence in the record—plainly show his inability to fit the requirements of medium work. Yet the ALJ made no mention of why he rejected Cowley's evidence. Such an articulation is necessary to enable a meaningful review of Secretary's decision. *Zblewski v. Schweiker*, 732 F.2d 75, 78–79 (7th Cir.1984).

■ Two different reports by the same disability examiner are the only items of purported evidence to support the ALJ's finding Cowley can do medium work. But nowhere does the examiner set forth how he or she arrived at his or her conclusion, which conflicts with all the objective (and for that matter subjective) evidence in the record. Indeed Cowley testified the examiner did not ask him to tell or to demonstrate what he could do. For an examin-

er's report to have any weight at all, it must be supported by some explanation of how those conclusions were reached, not by mere conjecture as to the claimant's abilities. See generally *Lynn v. Schweiker*, 565 F.Supp. 265, 269–70 (S.D.Tex.1983).

In short, two unsubstantiated reports are not substantial evidence in the record as a whole to show Cowley can do medium work. That is especially so when Secretary has the burden of proof on the issue and the ALJ has simply ignored the wealth of contrary evidence.[5] Thus the question becomes one also unaddressed by the ALJ: whether Cowley's prior skills (rusted as they are by disuse) are transferable, so that his possible ability to do light or sedentary work would render him not disabled.

■ Were this an appellate review of a trial, the answer would be easy: Secretary has made her record and has not sustained her burden, hence must lose. Here however we have an administrative procedure in which the ALJ is both the developer and the trier of the facts, and it is conceivable his failure to explore transferability of skills was the product of his decision Cowley could do medium work (which would render transferability irrelevant).

4. Transferability means (20 C.F.R. § 404.-1568(d)):

(d) **Skills that can be used in other work (transferability)—(1) What we mean by transferable skills.** We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

(2) **How we determine skills that can be transferred to other jobs.** Transferability is most probable and meaningful among jobs in which—

(i) The same or a lesser degree of skill is required;

(ii) The same or similar tools and machines are used; and

(iii) The same or similar raw materials, products, processes, or services are involved.

(3) **Degrees of transferability.** There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete simi-

larity of all three factors is not necessary for transferability. However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs and work settings, we consider that they are not transferable.

ALJ Niersbach has made no findings on whether Cowley's skills are transferable. There is no evidence in the record on that issue. Such a total absence of evidence violates an ALJ's duty to develop the record fully at the hearing. *Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir.1981) (per curiam).

5. Secretary's counsel now argues the ALJ could discredit Cowley's evidence on his capabilities because Cowley seldom goes to a doctor. Even if that proposition is correct (a matter on which this Court expresses no opinion), it is the *ALJ* who must articulate his reasons for ignoring Cowley's evidence, because it is the *ALJ*'s (hence Secretary's) decision that must be supported by substantial evidence. Secretary's brief on appeal to this Court cannot substitute itself for the ALJ.

Research has disclosed no cases calling for outright reversal under these circumstances. Accordingly a limited remand will be ordered. But because delay disadvantages claimants so substantially (a result aggravated where, as here, termination of a long-recognized disability is at issue), Secretary is put on notice that in future she will have just *one* chance at development of the record. This Court's determinations of substantiality of the evidence and whether Secretary has met her burdens will stand or fall on what the ALJ has done the first time around.

### Conclusion

Neither party's motion for summary judgment is granted (though Cowley has come close). This case is remanded to Secretary for a hearing by a different ALJ on the limited issues (1) whether Cowley can in fact do light or sedentary work and (2) if so, whether his prior work skills are in fact currently transferable. In the meantime disability payments must be restored to him.[6]

---

6. This result is called for because on remand to Secretary Cowley is in precisely the same position as any other benefit recipient whose termination of disability is in the administrative process. Secretary has declared a moratorium on termination of benefits for all such persons. HHS News Release, April 13, 1984. Cowley cannot rationally be distinguished from any such claimant, at least pending resolution of the issues on remand.