**Laura JACKSON, Plaintiff,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

No. 83 C 9069.

United States District Court, N.D. Illinois, E.D.

Aug. 24, 1984.

---

Frederick J. Daley, Chicago, Ill., for plaintiff.

Donna Morros Weinstein, Reg'l Atty., William T. Clabault, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Laura Jackson ("Jackson") seeks judicial review of a final decision of the Secretary of Health and Human Services ("Secretary") denying Jackson a period of disability and disability insurance benefits. Jackson's claim under Social Security Act ("Act") §§ 216(i) and 223, 42 U.S.C. §§ 416(i) and 423, was denied by ALJ Charles Walsh ("ALJ Walsh" or simply the "ALJ") after an April 19, 1983 hearing. Jackson then exhausted her administrative remedies (a process that resulted in the ALJ's decision becoming Secretary's) and brought this action against Secretary under Act § 205(g), 42 U.S.C. § 405(g).

As is customary in these cases, the parties have filed cross-motions for summary judgment under Fed.R.Civ.P. ("Rule") 56. In this case the ALJ's decision (which became Secretary's) rested on his finding Jackson could return to her past relevant work if it were available. Jackson contends the ALJ's findings are not supported by "substantial evidence" because record evidence does not support the propositions that:

1. Jackson's disabilities are not "severe."

2. Jackson can return to her past work as a sewing machine operator.

For the reasons stated in this memorandum opinion and order, Secretary's motion is granted and Jackson's is denied.

### Facts

Jackson was 57 years old at the date of the ALJ hearing and has an eleventh grade education. Until she was laid off in 1980 she worked for a number of years as a sewing machine operator for Brown's Industrial Uniforms, Inc. Her work required her to bend and reach, as well as to do close work with her hands, but little or no standing was required. She claims she has been disabled since April 30, 1981 with swelling of her legs, bursitis, osteoarthritis and adult-onset diabetes mellitus. In addition to her testimony, the record contains four medical opinions:

1. On November 14, 1981 Dr. Phillip Foley reported after a single examination (R. 93) Jackson suffers from "some early degenerative osteoarthritis of the right knee" and "Low grade bursitis of the right shoulder." He concluded Jackson could do "light work with occasional climbing, frequent bending, stooping and operating foot controls" and added, "Handling and fingering are all right."

2. On December 19, 1981 Dr. Virgilio Jonson dictated a discharge summary covering Jackson's just-concluded six-day stay at Roseland Community Hospital ("Roseland") (R. 94–95). He had diagnosed Jackson's diabetic condition for the first time. In addition he found Jackson had "osteoarthritis of the cervical and lumbar spine" and "generalized edema," or fluid buildup in the tissues, of unknown source. However she was discharged "with no limitation of her activity" after a diabetic diet and anti-swelling drugs improved her condition markedly.

3. On March 24, 1982 Dr. Mamie Long filed a report after a single examination of Jackson (R. 103–05). She found evidence of "Degenerative joint disease changes of the right shoulder and right knee with complaints of arthralgias in these areas" and "Adult onset diabetes mellitus." She also reported that by Jackson's own account she had experienced "congestive heart failure compensated at this time."[1] Dr. Long really made no findings bearing directly on ulti-

1. There is really no record support at all for Jackson's belief she had once suffered congestive heart failure. Dr. Jonson's report does state (R. 94) she was admitted to Roseland, among other reasons, "to rule out congestive [heart] failure." However no such problem was detected at that time.

mate issues such as whether Jackson could do either her past work or work-related activities in general.

4. On February 16, 1983 Dr. Pascual Sales reported treating Jackson at Roseland for a week in early 1983 (R. 118–23). He found pain and tenderness of the stomach and right flank ("acute abdomen secondary to acute pyelonephritis, right"), which improved on treatment with antibiotics and a soft low sodium diet. Jackson was discharged with "no restriction of her ambulation." Dr. Sales submitted a letter May 14, 1983 (R. 143), which read in its entirety:

Ms. Laura Jackson has been under medical care for recurrent swelling and edema to the both [sic] lower extremeties [sic] more so to her right leg. She also [sic] under medical care for;

1. Hypertension 130–180/90–110
2. Osteoarthritis to her neck and back.
3. Pyelonephritis—treated.

After reciting Jackson's own testimony and a good part of the medical evidence in summary form, ALJ Walsh found Jackson not disabled, evaluating the evidence in a single paragraph (R. 13):

The Administrative Law Judge has carefully evaluated the entire record and finds that the claimant is not engaging in substantial gainful activity. The claimant does have some impairments, however, they are not so severe, singly or in combination, that they preclude all forms of substantial gainful work activity. The claimant's prior job as a sewing machine operator was considered light to sedentary work (basically all sitting). Clinical findings does [sic] not reveal any severe impairments. The evidence indicates that if the claimant eats the right foods and stays on her 1800 diabetic diet, and

takes her medications as prescribed, she would not have dizziness. Her arthritis is not of disabling severity. The claimant does not allege constant disabling pain. She can ambulate without an assistive device. The Administrative Law Judge concludes that the claimant has the residual functional capacity to do her past relevant work as a sewing machine operator, therefore, it must be found that the claimant is not disabled as defined in the Social Security Act.

This action ensued.

### "Severity" of Jackson's Impairments

■ On occasion Secretary denies benefits on the ground a claimant's impairment is not "severe." See 20 C.F.R. § 404.-1520(c).[2] "Severity" is a de minimis requirement and has clearly been fulfilled here. It is nothing more than an administrative convenience and should be employed "only when a claim is so groundless that any analysis of the claimant's work experience or residual functional capacity would be a waste of time." *McCullough v. Heckler*, 583 F.Supp. 934, 937 (N.D.Ill. 1984).

■ Here however Secretary did not use the "severity" requirement to deny benefits. It is true ALJ Walsh stated (R. 13):

The claimant does have some impairments, however, they are not so severe, singly or in combination, that they preclude all forms of substantial gainful work activity.... Clinical findings does [sic] not reveal any severe impairments.

But he then proceeded to the next step of Secretary's sequential evaluation process, determining whether Jackson could return to her past work.[3] Apparently ALJ Walsh mistakenly viewed the "severity" requirement as providing that only if Jackson's

---

**2.** That requirement is drawn from the statutory definition of "disability," the term "severity" appearing for example in Act § 223(d)(2)(A), 42 U.S.C. § 423(d)(2)(A):

[A]n individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

**3.** See 20 C.F.R. § 404.1520 for a listing of the five official steps of the disability determination process.

impairments prevented her from performing basic work activities would those impairments be considered "severe," so that Jackson therefore would be considered "disabled."

That however is a semantic and not a substantive error. ALJ Walsh's mistake was harmless because he in fact went on to ascertain whether Jackson could perform her past relevant work. That is precisely what he would have done if he had applied the "severity" requirement correctly, concluding in Jackson's favor that her impairments were severe. Thus the ALJ's misunderstanding of the terminology did not " 'short-circuit[ ]' the disability determination process." *McCullough,* 583 F.Supp. at 939 (quoting Magistrate Lefkow).

### *Jackson's Ability To Do Past Work*

■ Secretary's conclusion that Jackson could return to her past work if it were available, if supported by "substantial evidence," mandates a finding Jackson is not disabled.[4] Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting from *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). That standard must be applied "considering the record as a whole." *Strunk v. Heckler,* 732 F.2d 1357, 1359 (7th Cir.1984).

■ Jackson claims the ALJ did not articulate his reasons for decision "in a manner sufficient to permit an informed review." *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir.1984), quoting from *Holndoner v. Schweiker,* 542 F.Supp. 739, 742 (N.D.Ill.1982). While it is true ALJ Walsh was rather summary in his evaluation of the evidence, the record does not reveal any real support for the position Jackson was in fact disabled. That is in sharp

contrast to *Garfield,* 732 F.2d at 610, which stated the court "should not encounter surprises of this magnitude" unfavorable to Secretary when reviewing the record, and to *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir.1984), which held "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." Without any substantial evidence of disability that must be rejected, ALJ Walsh's summary treatment is acceptable.

More specifically, Jackson invokes *Strittmatter v. Schweiker,* 729 F.2d 507 (7th Cir.1984) to urge ALJ Walsh has not given an adequate explanation of his finding Jackson can return to her past work. Because ALJ Walsh did not go into any detail in discussing the demands of Jackson's past work, Jackson argues a remand is necessary because, as in *Strittmatter,* 729 F.2d at 509, it cannot be determined "whether he did ascertain the demands of [her] former work and compared them with her present capacity."

ALJ Walsh's reasoning here however was not faulty, as was the ALJ's in *Strittmatter.* There the ALJ erroneously concluded the claimant could return to her past work because (1) her past work was sedentary in nature and (2) she could do *some* sedentary work. As the court pointed out (*id.* at 509), that reasoning relies on a logical fallacy because "sedentary work is not homogenous with respect to strenuousness."[5] Here ALJ Walsh did engage in the first step of the analysis found wanting in *Strittmatter* when he found (R. 13) Jackson's past work "was considered light to sedentary work." But the ALJ did not complete the fallacy by concluding on the basis of Jackson's perceived ability to do only *some* light work that she could return to her past work. Instead he specifically concluded she could still work as a sewing machine operator after reviewing the non-

---

**4.** See the definition of "disability" quoted in n. 2.

**5.** Thus the logical fallacy condemned in *Strittmatter* takes this non sequitur form:

1. A is B.
2. Some B are C.
3. Therefore A is C.

disabling nature of her several impairments. Certainly *Strittmatter* did not outlaw all descriptions of claimants' past work as "light" or "sedentary." [6]

Moreover the ALJ's statements about Jackson's past work as a sewing machine operator and her ability to perform it are adequately supported by the record. Jackson's own description of her past work (R. 70) reveals it is light or sedentary work. She wrote "I had to pick up the jacket and put them [sic] on the machine, worked like peace [sic] work. They come in like in Big Basket [sic]." She reported she sat eight hours a day but was bending and reaching constantly. Describing her lifting and carrying, she said she "lifted it [sic] all day but did not have to carry it." That description provides substantial support for the conclusion Jackson's past work was light or sedentary in nature.

ALJ Walsh's finding Jackson could return to her past work also is supported by substantial evidence. At worst this case could have gone either way on the facts. All Jackson's testimony was consistent with the hypothesis she was not disabled, or at least would not be disabled if she followed her diabetic diet. No physician in the record actually expressed a view Jackson could not perform the type of activities her past work involved.[7] Both treating physicians reported no serious impairments remained upon discharge from either of her two hospital stays. In short, the evidence favorable to Secretary does not suffer from any of the weaknesses found fatal to the government's position in *Carver v. Harris*, 634 F.2d 363, 364 (7th Cir.1980) (per curiam) or *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir.1977). Accordingly

reversal or even remand is wholly inappropriate.

### Conclusion

This Court (like so many dealing with the recent flood of totally unjustified terminations or denials of disability benefits) has often been sharply critical of Secretary's efforts in this area. All too often they are strongly redolent of being "result-oriented rather than justice-oriented" (*Jones v. Heckler*, 583 F.Supp. 1250, 1253 (N.D.Ill. 1984)). But that does not entitle a claimant to recover when an ALJ (as here) has made a conscientious review of all the evidence and has reached a conclusion supported by the requisite "substantial evidence."

There is no genuine issue of material fact, and Secretary is entitled to a judgment as a matter of law. Secretary's Rule 56 motion is granted, Jackson's is denied, and this action is dismissed.

---

**6.** Our Court of Appeals' recent decision in *Johnson v. Heckler*, 741 F.2d 948, at 953–954, No. 83–2593, slip op. at 10–11 (7th Cir. Aug. 9, 1984) illustrates the point. There the ALJ reasoned (1) the claimant could do all sedentary work and (2) the claimant's past work was sedentary in nature, so (3) the claimant could return to her past work. Understandably the Court upheld the ALJ's determination.

**7.** Dr. Foley's report (R. 93) actually provides strong evidence Jackson *can* return to her past work. He reports she can do bending and stooping, and also can perform "light" work. Jackson was not diagnosed as diabetic until later, but all sources (including Jackson herself) agree her diabetic condition is fully controllable. Jackson's testimony (R. 30) "you can't afford a diet like the one I'm supposed to stay on" is not so serious a contention it must be addressed specifically by the ALJ.