**Ernestine JOHNSON, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.**

**No. 84 Civ. 1846 (RLC).**

United States District Court, S.D. New York.

Nov. 9, 1984.

On Motion to Reargue Dec. 21, 1984.

■

---

Norman Siegel, New York City, for plaintiff; Gary S. Stone, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Rosemarie E. Matera, Sp. Asst. U.S. Atty., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Ernestine Johnson seeks review[1] of a final order of the Secretary of Health and Human Services terminating her entitlement to Social Security disability benefits. 42 U.S.C. § 405(g). Plaintiff, now 50 years old, worked for 17 years as a machine operator in a book bindery until 1971, when she injured her left leg in a

---

1. This case originally came before us on defendant's motion to extend the time to answer, and plaintiff's request for interim benefits. While the motion and request were *sub judice,* defendant answered. We are now exercising the power granted by 42 U.S.C. § 405(g) to review the Secretary's determination upon the pleadings and transcript of the record. Since we are reversing the Secretary's determination,. remanding for a rehearing, and ordering benefits reinstated, both defendant's original motion and plaintiff's request are now moot.

work-related accident. She was adjudged to be disabled in November, 1971, and began receiving disability benefits. The Secretary reviewed Johnson's case in 1982; a determination that her disability had ceased as of March, 1982, was upheld on reconsideration and affirmed by an ALJ after an evidentiary hearing. The Appeals Council declined to review the ALJ's ruling, which thereby became the final decision of the Secretary. 20 C.F.R. § 404.981.

## I

■ The Secretary is authorized to terminate disability benefits to a claimant whose disability has ceased. 42 U.S.C. § 425(a). Under the medical improvement standard recently adopted by the Second Circuit, "the Secretary may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled, or that the initial finding of disability was erroneous." *De Leon v. Secretary of Health and Human Services*, 734 F.2d 930, 936 (2d Cir.1984). *See also Rush v. Secretary of Health and Human Services*, 738 F.2d 909 (8th Cir.1984); *Dotson v. Schweiker*, 719 F.2d 80 (4th Cir.1983); *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir.1983); *Patti v. Schweiker*, 669 F.2d 582 (9th Cir.1982); *Velazquez v. Heckler*, 586 F.Supp. 125 (S.D.N.Y.1984) (Sweet, J.); *Gibbons v. Heckler*, 583 F.Supp. 1080 (S.D. N.Y.1984) (Carter, J.); *Mersel v. Heckler*, 577 F.Supp. 1400 (S.D.N.Y.1984) (Carter, J.).

■ The Secretary must compare the claimant's condition at the time of the Secretary's review, with the claimant's condition when benefits were first granted. *De Leon v. Secretary of Health and Human Services, supra*, 734 F.2d at 937. Once it is established that a particular condition is disabling, the claimant "is entitled to a presumption that as long as there is no change in the condition itself, or in the governing statutes or regulations, neither will the statutory classification of disability be changed." *Id.*

■ Here, the Secretary made no attempt to compare Johnson's current condition with her condition in 1971. Instead, the ALJ, in her decision, merely followed the established five-step procedure for determining whether an individual is *currently* disabled, 20 C.F.R. §§ 404.1520, 416.920, and terminated benefits upon deciding that Johnson could return to her old job now. The record contains no substantial evidence that Johnson's condition had improved since the 1971 disability determination. In fact, the little evidence there is in the record suggests that Johnson's condition actually deteriorated. For example, the 1981 report of Dr. J. Samuel notes that Johnson apparently complained of more health problems in 1981 than in 1971. (Record at 73). And Johnson, describing the leg injury she sustained in 1971, testified at her hearing as follows:

Q: Alright [sic]. Does it ever get better or worse?

A: Well, at the beginning it got a little better and then it got worse.

Q: How is it now?

A: Well, its [sic] much worse than it was when it was first there. (Record at 53).

In failing to compare Johnson's condition in 1971 with her condition in 1982, the Secretary applied an erroneous legal standard to her review of Johnson's case. Accordingly, the Secretary's determination is reversed. As was noted in *Gibbons, supra*, 583 F.Supp. at 1082, "[t]he court cannot, itself, apply the 'medical improvement' standard to the evidence in the record because the record is largely devoid of the detailed information about plaintiff's previous medical condition that would allow the court to make such an evaluation." We therefore remand this case to the Secretary for a rehearing to determine whether there has been improvement in plaintiff's medical condition.

## II

■ We also find that the Secretary's determination that Johnson is now able to

return to her old job at the book bindery is not supported by substantial evidence.[2] Strictly speaking, we do not need to reach this issue, since the Secretary terminated benefits without first finding that the claimant's condition had improved, and that by itself is sufficient ground to reverse the Secretary. However, it is appropriate to scrutinize the Secretary's determination that Johnson can now go back to work since the Secretary may terminate benefits only if she finds *both* that the claimant's condition has improved and that the claimant is not currently disabled.[3]

The ALJ based her determination that Johnson could return to her old job on two factual findings: first, that despite her impairments[4] Johnson could sit or stand for up to one hour, and second, that Johnson's old job could be performed either sitting or standing, as Johnson's condition required. (Record at 40–41). There is substantial evidence in the record to support the Secretary's first finding: the report of the treating physician (Record at 116), the report of a consulting physician called in by the Secretary (Record at 105), and Johnson's own testimony that she could sit for 45 minutes or stand for up to 30 (Record at 58). But there is no substantial evidence in the record to support the Secretary's second finding—that book binders could alternate or choose between sitting and standing while on the job. In the Vocational Report Form submitted to the Secretary on November 8, 1981, Johnson reported that in an eight-hour workday at her former job, workers would walk and stand for the full eight hours, and sit for none. (Record at 89). It is true that at her hearing Johnson answered the question, regarding work conditions, "Did you sit or stand or both?" by saying, "Both at times." (Record at 51). But this testimony alone would not be substantial evidence that she could sit and stand in units of time mandated by her weakened physical stamina. Moreover, Johnson explained her answer in an affidavit to the Appeals Council:[5] "[T]he feeders stand and bend continuously for the entire work day, except for a ten-minute coffee break in the morning and afternoon, and a 45-minute lunch break.... The feeder's job, therefore, demanded constant standing and bending. The only job on the bindery for which one could sit down was single sheet binding. This was a very rare assignment—perhaps once or twice a year. Indeed, they were in the process of phasing out this single sheet binding method." (Record at 10–11). There is no other evidence in the record regarding work conditions at the bindery.

Taken as a whole, the record does not contain substantial evidence to support the finding that Johnson's old job could be performed either sitting or standing. The final determination that Johnson, with her limited capacities for sitting and standing, is currently able to return to that job is

---

**2.** The standard of judicial review of the Secretary's determination regarding current disability is whether the determination is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

**3.** The medical improvement standard requires "substantial evidence that the individual's condition has improved *to the point that he or she is no longer disabled,*" *De Leon v. Secretary of Health, supra,* 734 F.2d at 936, emphasis added. The Secretary could also terminate if she found, based on substantial evidence, that the initial finding of disability was erroneous. *Id.* In the instant case, however, there is no evidence in the record suggesting that the initial finding was erroneous.

**4.** The record shows that Johnson suffers primarily from a large ulcer on her left lower calf, and also complains of diabetes, hypertension, an enlarged heart, osteoarthritis, obesity and varicose veins.

**5.** New and material evidence submitted to the Appeals Council after the ALJ's decision becomes part of the entire record. 20 C.F.R. § 404.970. This court is reviewing the Secretary's determination, not the ALJ's, 42 U.S.C. § 405(g), so it is proper for the court to take into account evidence available to the Appeals Council—and thus to the Secretary—even if the evidence was not available to the ALJ.

thus also without substantial evidence and is, accordingly, reversed.

Under the applicable Social Security regulations, if there is no substantial evidence that the claimant can return to his or her old job, the Secretary's next line of inquiry is to determine whether the claimant could perform any other job in the national economy. 20 C.F.R. §§ 404.1520, 416.920. It is inappropriate for the court to make that inquiry, since it is the Secretary's burden to prove that there is other work which the claimant could perform. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). The question of claimant's current disability is, therefore, remanded to the Secretary.

### III

In sum, the Secretary's determination is reversed and remanded for rehearing. The court hereby orders the reinstatement of plaintiff's benefits retroactive to the date of termination, unless and until the Secretary determines that plaintiff's condition has improved to the point that she is no longer disabled, or that the initial finding of disability was erroneous.

IT IS SO ORDERED.

### ON MOTION TO REARGUE

This action was commenced on March 15, 1984, when plaintiff filed a complaint seeking review of the final determination of the Secretary of Health and Human Services terminating her disability benefits. The Secretary answered on August 10, 1984. On November 9, 1984, the court reversed the Secretary's decision because the Secretary had followed improper procedure in terminating benefits. The court was unable to determine, based on the evidence in the record before it, whether plaintiff's benefits should have been terminated on the merits, so the case was remanded to the Secretary for rehearing. The court ordered payment of benefits retroactive to the date of termination because there had been no valid administrative finding overruling the original determination by the Secretary granting plaintiff benefits, and because of delays by the Secretary in re-

sponding to plaintiff's complaint. The Secretary now moves to reargue that portion of the order directing the Secretary to pay retroactive benefits.

The Secretary has directed the court's attention to § 2 of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 2, 98 Stat. 1794, 1794–1799. The court was unaware of this provision when it rendered its opinion on November 9. Subsection 2(d) of the Reform Act requires the remand of all benefit-termination cases "relating to medical improvement" where judicial review was pending on September 19, 1984. Plaintiff and the Secretary agree that this includes the instant case. Section 2(e) of the Reform Act provides that any individual whose case is remanded under § 2(d) may elect to have benefits restored "beginning with the month in which he makes such election ..." Such payments, if elected, "shall begin with the payment for the month in which [the] individual makes such election" § 2(e)(2).

Plaintiff argues that the court retains the power to order remedies more expansive than the one provided for in the statute. The court disagrees. In providing for the particular remedy of payments beginning with the month of election, Congress intended to exclude more expansive remedies, such as payments retroactive to termination. *Expressio unis est exclusio alterius. National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). The Secretary's motion is therefore granted. The order to pay retroactive benefits is hereby rescinded.

The Secretary filed this motion to reargue on November 20, 1984. Plaintiff indicated her intention to oppose the Secretary's motion in a letter to chambers on November 30, 1984. A copy was sent to counsel for the Secretary. This letter evidenced plaintiff's election to protect her benefits. The court holds that plaintiff would have elected to receive benefits in November had the court's November 9 rul-

ing not ordered retroactive benefits (thus eliminating the need for plaintiff to make the election herself). Consequently, the Secretary is ordered to pay benefits pursuant to § 2 of the Reform Act, commencing with the November payment.

IT IS SO ORDERED.